# Boles v. Commonwealth.

March 11, 1947.

Lilburn Phelps, Special Judge.

Duncan & Duncan for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

Hige Boles, City Marshal of Albany, the appellant, was adjudged guilty of the offense of breaking and entering a storehouse with intent to steal. Punishment was fixed at two years in the penitentiary. He appeals:

The grounds now urged for reversal are based upon the following, asserted, trial errors of avowed prejudicial nature, viz.: (1) Admission of evidence procured on defective affidavit for search warrant and (2) admission of evidence in the form of articles seized in searching

appellant's home and (3) unauthorized issual of search warrant by the Clinton County Court's acting judge pro tem.

This case seems to have carried some semblance of that wooden horse stratagem by which the Greeks came inside the walls of the Trojan city by clever ruse, slipped out of the great, wooden belly in the shadows of night, opened the city gates from the inside to their compatriots on the outside, turned the misplaced confidence of that City of Troy into a tragedy for its people. To support this wooden horse conception, the Commonwealth proved that the Reneau Drug Store in Albany was forcibly entered and its small, green-painted safe stolen therefrom during the night of June 22, 1945, after the store had been closed for the night at about 8 P. M. It proved that Hige Boles, who was then city marshal, had borrowed, for a period of about one hour, a green car having three rear lights, around 10 P. M. of that night, that a car answering this description and occupied by two men came to the home of Bill Melton, located on the Dale Hollow Lake Road about 5½ miles westward of Albany, between 10 P. M. and 12 P. M. of that same night, that one of the men of this car borrowed a hammer from Melton, that the hammer was returned that night bearing traces of green paint on it, that the traces of green paint had not been on the hammer before it was borrowed, that the Reneau safe was found on June 24, 1945, broken and plundered about 1½ miles from Melton's place, that automobile tracks similar to those of the car borrowed by Boles were found at or near the plundered safe, that a white filler substance, used in safe construction but rather rare in this particular type, called vermiculite or mica expanded by heat, was found in quantity where the safe had been broken, that Boles, upon returning the borrowed car that night of June 22nd, had remarked to bystanders about some white substance on his pants and had brushed some of it off, that pants and shoes of Boles were taken from his home by means of search warrant, that white substances found on these pants and shoes were discovered, under laboratory examination conducted by Federal Bureau of Investigation, to be similar to the vermiculite substance taken from the Reneau safe and also taken from the ground where the safe had been plundered.

1. Appellant insists that the affidavit for search warrant, used in getting Boles' pants and shoes. and in getting white substances from them, was defective in failing to state the source of the affiant's information and the grounds of his belief. We have carefully read the affidavit in question. It goes into considerable detail in setting forth the *facts* constituting the basis of the affiant's belief, although it does not name any person as a source of its information. While the affidavit does not say that it was made upon information and belief, yet it could be conceded that it was so made and still the affidavit might, we believe, be considered sufficient and valid for issual of a search warrant thereon. We believe it to be valid because it recites the facts. Having read the first case cited by able counsel for appellant, we found therein the declaration that an affidavit for search warrant would be considered insufficient unless it was accompanied by facts showing the source of information *or* the grounds of belief. It was not declared that the source of information, *and* the grounds of belief must both be stated. The source *or* grounds is required, but both the source *and* grounds are not required to be hitched up together in double rig fashion, as we read the authorities on this question. See Van Hook v. Commonwealth, 247 Ky. 81, 56 S. W. 2d 702; Jackson v. Commonwealth, 214 Ky. 166, 282 S. W. 1058; Strong v. Commonwealth, 297 Ky. 591, 180 S. W. 2d 560.

Section 10, Ky. Constitution, vouchsafes security to citizens against *unreasonable* search and seizure, not against a search and seizure springing from the rationality of stated facts molded into a probable cause. Since the affidavit in question related all the basic facts, we must now rule that such affidavit was so robed with all the necessary apparel of good, probable cause that it appears to us to have been clad in full-dress legality.

2. Appellant further contends that the trial court committed prejudicial error in admitting appellant's pants and shoes, together with the white substances found on them, as evidence in this case. He bases his view in this respect on the evidential nature of such articles and says that no property may be taken from an accused for use as evidence against such accused unless the ownership, possession or use of such property was unlawful within itself. If this position were correct, a

shotgun used in committing a murder could never be taken from an accused and introduced in evidence on his trial. Ownership, possession and use of a shotgun are all perfectly legal. Yet there is nothing in the law, so far as we know, prohibiting the taking of such an article of property from its owner in lawful seizure to the specific end that it may be used as probative evidence in court. This question, we believe, gets back to the basic legality of the search and seizure in the first place. If the affidavit for search warrant were sufficient and the warrant itself regular on its face, then there would appear to have been no reason for the searching officer or the court to have ignored the incriminating recitals of these mute objects willing to give their own story in the case for whatever it might be worth to the jury in probative value. Since the search of appellant's place was itself legal, the introduction of his lawful but incriminating articles of clothing as evidence appears to us to have been free from error.

3. Appellant's third contention is that this search warrant, issued by the Clinton County Court judge pro tem., was invalid because there was no showing that the regular judge was absent or disqualified or unable to serve in his own right.

We note that appellant has conceded in his brief that the person accused has the burden of proof resting upon his own shoulders to establish the invalidity of a search warrant whenever such warrant appears to be regular on its own countenance. Appellant has not undertaken to assume or to carry a single short ounce of that burden, which he admitted to belong to himself, by showing that the regular judge was actually present or qualified or able to act at the time this warrant issued. Therefore, this warrant, carrying the countenance of apparently legal respectability, must remain in good repute until its antagonists shall have succeeded in showing that it was conceived in the sin of some impropriety or brought forth in the iniquity of some irregularity.

If appellant was really guilty in this case, as charged by the Commonwealth and as believed by his chosen jury, then his position was that of an Absalom living in the house of King David or that of a Brutus lingering around the court of Caesar, and under those conditions

the punishment meted out would be considered light in comparison with the gravity of the offense. No court, so far as we know, has ever sought to sanction safe stealing by a town policeman, this being foreign to his usual chores. Nevertheless, following the requirements of our appellate court duty, we have earnestly tried to scrutinize the fairness of this appellant's day in court and in so doing we have reached the conclusion that it was so fair as to be free from prejudicial error.

Wherefore, the judgment is affirmed.