Hershel BURCH, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. SC–36–MR.

Supreme Court of Kentucky.

July 1, 1977.

Rehearing Denied Oct. 28, 1977.

Jack Emory Farley, Public Defender, J. Vincent Aprile, II, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., William W. Pollard, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENSON, Justice.

The appellant, Hershel Burch, was indicted, tried by jury, and convicted of the murder of his 17-year-old stepson. He was sentenced to life imprisonment. We affirm.

Burch was convicted and sentenced in 1973 and appeal was not perfected. After two RCr 11.42 motions were denied, the United States District Court for the Eastern District of Kentucky granted a conditional writ of habeas corpus giving the trial court an opportunity to grant Burch a belated appeal, which was done.

On the trial of the case, Burch's wife testified that Keith Gabbard, the deceased who was her son and Burch's stepson, borrowed a car belonging to Burch and refused to return it until compelled to do so by a legal proceeding initiated by Burch, and that later the same day, Gabbard approached the house and Burch held the screen door to prevent Gabbard from entering. Gabbard struck at him through the

door. After the incident, Burch left the house and did not return until 5:30 the next morning. In the meantime, Gabbard went to bed and was asleep in Burch's bedroom. While Burch was seated on his wife's bed conversing, she noticed he had been drinking. Shortly thereafter, according to the wife, Burch went outside and returned with a shotgun. Burch sat on the bed again, and in the course of the conversation stated that if Gabbard jumped on him again, he would kill him. Then, according to the wife, Burch jumped from the bed, went into his bedroom where Gabbard was sleeping, and shot Gabbard in the face killing him. The wife testified she was close behind Burch when the shooting occurred. She further testified that Gabbard was "violent if bothered."

Burch's 14-year-old stepdaughter testified that she was asleep in the same room with her mother, was awakened, and heard Burch saying "that was the best way to get him," as he jumped from the bed. She testified she saw Burch raise the gun, shoot Gabbard, and run from the house.

The owner of the shotgun, Burch's brother-in-law, testified Burch borrowed the shotgun to go squirrel hunting.

Burch testified that Gabbard threatened him with a butcher knife on one occasion and that he carried a switchblade knife. After the incident at the screen door, he was afraid to stay at home and went to a friend's and drank more than a pint and one-half of whiskey. He borrowed the shotgun for squirrel hunting and for protection against Gabbard. Further, he testified that he returned home, talked with his wife for awhile in her bedroom, then went outside to check on the weather and to turn out the lights on his car. When he returned to the house, he went to his bedroom and left the shotgun by the closet. He saw someone in his bed in the dim light but assumed it was his stepdaughter. He returned to his wife's bedroom, and when she told him Gabbard was in his bed, he testified that he was afraid Gabbard might

wake up and he would be in trouble because the gun had been left near the bed. Then Burch testified:

"A I rushed in there and grabbed the gun and started backing out with it, and he partly raised up and pointed his finger at me and made a dive under the pillow with his right hand, and as I was backing out trying to get away the gun accidentally discharged.

"D 90 Which hand did you have the gun with?

"A I reached down and got it with the left hand and swung it around like this.

"D 91 Where did you have your right, did you have it in the trigger cage?

"A I slapped it in the trigger cage and jerked the hammer back, yes, sir.

"D 92 Well, did you intend to fire the gun at that time?

"A No, sir, I did not unless I had to.

"D 93 What do you mean if you had to?

"A Well, if he come out of that bed or brought something out from under that pillow to hurt me with and he had threatened me the day before, I would have used it, yes, sir.

"D 94 You tell this jury now that the actual discharge of it was accidental?

"A Yes, sir, it was accidental."

A witness for Burch testified that Burch was visiting his home about 4 or 5 a. m., was drinking whiskey with him and that Burch was drunk.

With all the evidence in, the trial court instructed the jury on the offenses of murder, voluntary manslaughter, first- and second-degree involuntary manslaughter, and the defenses of self-defense and accidental shooting.

On this appeal, Burch makes four assertions of error:

(1) Improper remarks on the part of the Commonwealth's attorney;

(2) Failure of the trial court to give an instruction on intoxication;

(3) The murder instruction given by the trial court did not require the Common-

wealth to prove beyond a reasonable doubt the absence of "sudden affray" or "sudden heat and passion"; and

(4) *An unconstitutional statute, KRS 421.225(2), required Burch to testify before any other defense witness.*

We are constantly being importuned by the Public Defender to issue a reasoned opinion covering every issue raised by the appellant. We have decided to do so in this opinion, and it should illustrate why we frequently, as do all appellate courts, discuss some of the issues on appeal and decline to discuss others for the reason they are without merit.

None of the assertions of error were objected to at the trial or preserved in any manner for review of the issues by the court. Burch was represented by able trial counsel. It is apparent to us why he did not bother to make issues where none existed.

■ (1) In the opening statement, the Commonwealth's attorney told the jury that he had inquired about squirrel hunting season, and it was not the season for squirrel hunting. Burch's brief recognized that the witness who lent the gun testified that it was "squirrel season," and the subject was never again mentioned. It is argued that the statement was highly prejudicial to Burch for the reason that it was important to the issue of premeditation. In our view, this is much ado about nothing. That a jury would be influenced by the statement in view of the evidence presented is absurd. The argument is less than trivial.

■ Also in opening statement, the Commonwealth's attorney stated that the stepdaughter would testify Burch said, "Well, this is a good a time as any," before shooting Gabbard. This was repeated in the closing argument for the Commonwealth. We are unable to comprehend the argument that the remark of the Commonwealth's attorney that the stepdaughter would testify "this is a good a time as any" was

damaging, prejudicial testimony in light of the actual testimony "that was the best way to get him." We cannot see where one statement is more damaging than the other in light of the other testimony. It occurs to us that trial counsel made no objection on the theory that an objection to correct would impress a damaging statement even more in the minds of the jury.

■ A further assertion is made that in closing argument to the jury the Commonwealth's attorney "testified" about the operation of the shotgun. He argued that because it was necessary to pull back the hammer before pulling the trigger, the jury should disregard accidental killing. A curious argument is made that this informed the jury of facts not in evidence since the record did not contain "expert" opinion evidence concerning the method of firing the shotgun. Burch did testify that he cocked the gun, and why anyone would argue that it would require expert evidence concerning the method of firing a shotgun is beyond our comprehension.

The remainder of this argument goes to assertions of "inflammatory" remarks which we view as reasonable inferences from the evidence.

To sum up the issue, the Public Defender argues that these remarks deprived him of a fair trial and deprived him of his right of confrontation, the asserted errors being of constitutional magnitude. The argument is little short of asinine.

■ (2) Next it is argued the trial court should have given an intoxication instruction *sua sponte.* Burch testified in detail about the circumstances before and after the shooting. His defense was "accidental shooting." There was evidence of some intoxication, but not to the degree from which a jury could infer it was so severe as to negate intent. After citing *Richards v. Commonwealth,* Ky., 517 S.W.2d 237 (1974), we wonder why the argument is pursued. In order to justify an instruction on intoxication, there must be

evidence to raise an issue of intoxication of such a degree as to negate intent. That is not the situation here. See *Jewell v. Commonwealth,* Ky., 549 S.W.2d 807 (1977). Burch cannot have it three ways. He received an instruction on self-defense and accident. This was more than that to which he was entitled. Self-defense is "intended to commit the act for fear of personal injury or death"; accident is "I did not intend to commit the act." The two are contradictory, and it would be absurd to interject yet another defense that "I was so intoxicated, I did not know what I was doing." A good argument could be made that absurd contradictory instructions would prejudice the jury. Trial counsel obviously knew he was not entitled to this instruction and did not ask for it.

■ (3) Next, we wonder how a trial court could instruct a jury that the Commonwealth was required to prove beyond a reasonable doubt the absence of "sudden affray" or "sudden heat and passion." Here the Commonwealth was proving the offense of murder. Voluntary manslaughter is a lesser offense. An instruction on voluntary manslaughter is given if justified by the evidence adduced at trial, whether by the prosecution or by the defendant. Here, we are not at all convinced that the instruction was required. The trial court acted out of an abundance of caution, and it is obvious to us why no objection was made to this portion of the instruction. It was beneficial to Burch. *Partin v. Commonwealth,* Ky., 445 S.W.2d 433 (1969), is cited by Burch and answers his argument.

■ We take exception to the statement of the Public Defender that in this jurisdiction a homicide with the use of a deadly weapon raises a presumption of murder and that the burden of proof affirmatively shifts to the accused to prove circumstances to reduce the charge. The inference spoken of in *Partin* is not a presumption. There is a vast difference between the two, and we are not aware of any opinions by this court

which would support the statement of the Public Defender. None is cited.

It is obvious to us that this statement was made in an attempt to bring this case within the purview of *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), where the Public Defender states that a similar statutory construction was examined. This is indeed a surprise to us inasmuch as we do not have a statute such as that condemned in *Mullaney.* The Maine statute, as construed by the court of last resort in Maine, placed the *burden of proof* on the defendant to show he acted in heat of passion or sudden provocation in order to reduce a charge of murder to manslaughter. Our case law does not cast the burden of proof on the defendant to reduce the offense. *Mullaney* is not applicable here in any respect.

■ (4) Lastly, we see an argument unique in criminal jurisprudence. The Public Defender argues for Burch that an unconstitutional statute forced him to testify first. When this case was tried in 1973, KRS 421.225(2), since repealed, provided that a defendant shall not be allowed to testify after any other witness has testified for the defense.

In *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), a Tennessee statute, which required a defendant to testify before any other witness testifying in his behalf, was declared unconstitutional. There the defendant requested of the trial court that he be allowed to present other defense witnesses first, and this request was denied. Thus an issue was preserved for appellate review.

There was no such request here, and this lack leads the Public Defender to the argument that an unconstitutional statute forced Burch to testify first. We had thought we were relegated to reviewing issues concerning assertions of error on the part of the trial court, and are of that opinion still. We do not know if Burch wanted to testify first or not. We can say

that none of the other witnesses offered any testimony helpful to his defense of "accidental shooting," so it would seem he desired to testify first and get his defense before the jury.

To sum it up, this is a frivolous appeal without an arguable issue, even had the issues been preserved for review.

■ We discern from our review of the Public Defender's brief and arguments over a period of time, a complete lack of comprehension of the role an appellate court plays in an orderly judicial system. We review issues properly presented to the trial court, save in the rare instance of a situation where we believe a manifest injustice requires that we concern ourselves with an issue not so presented.

We observe it is better to cite one case in point than one hundred which are not applicable in the fact situations at all. A jury issue was presented here; the jury resolved it adversely to Burch. He received a fair trial.

The judgment is affirmed.

All concur.