The BOARD OF ELECTIONS OF TAYLOR COUNTY, Kentucky, Composed of Randall G. Phillips, Ezra Caffee, James C. Lacy, and Donald Gaines, Appellants,

v.

BOARD OF EDUCATION OF the CAMPBELLSVILLE INDEPENDENT SCHOOL DISTRICT, Appellee.

Court of Appeals of Kentucky.

June 25, 1982.

---

Larry D. Noe, Campbellsville, for appellant.

John S. Smith, Spragens, Smith & Higdon, P. S. C., Lebanon, for appellee.

Before HAYES, C. J., and GANT and McDONALD, JJ.

McDONALD, Judge:

The Board of Education of Campbellsville Independent School District (hereinafter referred to as the "Board of Education"), on March 16, 1981, adopted a resolution levying within the Campbellsville Independent School District a 2 percent utility gross receipts license tax for schools, as authorized by K.R.S. 160.593 and 160.613. The tax was to be in effect for a period of six years and its proceeds were to be used for the construction of an addition to the present high school building.

A group known as the "We Care Committee" was formed in opposition to the tax. This group, headed by M. Louise Russell, attempted to comply with the provisions of K.R.S. 160.597 by filing with the Board of Elections of Taylor County, Kentucky (hereinafter referred to as the "Board of Elections") petitions in opposition to the tax. The effect of the proper filing of such

petitions would be to suspend the levying of the tax until the question could be placed on the ballot for voter approval at the next election.

K.R.S. 160.597 requires among other things that a petition in opposition to a utility gross receipts license tax must be signed by a number of qualified and registered voters equal to 15 percent of the votes cast in the school district for the office receiving the greatest total vote at the last preceding presidential election; that each person signing his name to the petition shall sign in the same manner as he signed the current registration form described in K.R.S. 116.155 or subsection (2) of K.R.S. 116.045; and that one or more persons shall verify by affidavit the signatures and addresses of the signers of the petition. The statute gives to the county board of elections the authority to determine whether the petition contains enough signatures to suspend the effect of the order or resolution levying the tax, and requires it to certify to the school board within 30 days of receipt of the petition that the petition is properly presented and is in compliance with the provisions of the statute.

The signatures gathered by the We Care Committee were delivered to the office of the Committee's attorney by the various circulators of the petition. At that time the attorney's secretary, Ms. Becky Thompson, handed to the circulators affidavits previously prepared for the purpose of verifying the signatures and addresses of those who signed the petition. Each circulator read an affidavit and signed it, and each affidavit was notarized by Ms. Thompson.

On April 30, 1981, the signed petitions and affidavits were delivered to Randall Phillips, chairman of the Board of Elections. Mr. Phillips determined that 772 signatures were required to comply with the statute and to place the matter on the ballot at the next election. He and other members of the Board of Elections checked signatures and addresses on the petitions against the signatures on the voter registration cards in Taylor County. When they had found what they believed to be more than 800 correctly

signed signatures, the Board of Elections members did not check further to ascertain the total number of correct signatures on the petition. As a result, some of the signatures were never checked for compliance with the statute.

Mr. Phillips then mailed to the Board of Education a letter certifying that the petitions were presented in accordance with the statute. Mr. Phillips' testimony was that he signed, stamped, and placed the letter in the mail on May 30, which was 30 days after receipt of the petitions by the Board of Elections. However, the postmark on the envelope bears a date of May 14. The record reflects that the letter could have been mailed on the afternoon of May 13 or very early on the morning of May 14, 1981.

Upon receipt of the letter of certification from the Board of Elections, David Fryrear, Superintendent of Schools of the Campbellsville Independent School District, made his own check, with his staff, of the signatures on the petitions against those on the voter registration cards. It was their conclusion and opinion that 466 of the signatures certified by the Board of Elections were not signed in the same manner as the signatures on the voter registration cards and were improperly certified. Therefore, the Board of Education filed an action on June 11, 1981, seeking an injunction against placing the matter on the ballot. The case was tried before the court on July 25, 1981, at which time the trial court ruled in favor of the Board of Education and enjoined Board of Elections from placing the question on the ballot. The trial court made the following findings of fact:

1. That the Recall Petition presented to the Respondent [Board of Elections] and subsequently certified to the Petitioner [Board of Education] did not contain the proper signatures and addresses of the required number of voters to constitute the Recall Petition authorized.

2. That the Recall Petition was not certified by the Respondent to the Petitioner within the thirty days required by K.R.S. 160.597.

3. That the signatures and addresses of those signing the Petition were not verified by affidavit in that the evidence shows without contradiction that the persons signing same did not take the required oath to constitute verification by affidavit.

The Board of Elections filed a motion for a new trial which was denied by the trial court after a hearing held on August 17, 1981. The motion was overruled and this appeal followed.

The Board of Elections asserts as error each of the above findings of the trial court. In addition, it alleges the following as grounds for reversal: (1) That the trial court erred in failing to postpone the trial since appellant did not receive reasonable notice, pursuant to CR 40, that the case had been set for trial; (2) that the trial court erred by not granting a jury trial; (3) that the trial court erred in allowing employees of the Board of Education to testify regarding the signatures and addresses in question; and (4) that the trial court abused its discretion by failing to grant a new trial.

■ The order of the court dated July 17, 1981, which assigned this case for trial on July 25, 1981, recited that both parties had agreed that the matter should be advanced on the docket because of the nature of the matter to be considered. The issue the court was concerned about was largely the adequacy of the signatures of the petition and whether or not they were properly verified. All the petitions and signatures were a matter of record, and both parties had made discovery since suit was filed on June 11. We find no abuse of discretion on the part of the trial judge or prejudice to the appellant by this case being assigned for trial on short notice.

■ Appellant also argues that the trial court erred in failing to grant a jury trial. Civil Rule 39.01 states:

When a trial by jury has been demanded as provided in Rule 38 the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless (a) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury . . . .

The order assigning this case for trial recites: "Counsel for both parties having agreed . . . It is ordered that this matter shall be assigned for trial before the Court on the 25th day of July, 1981, at 9:30 A.M., in the Taylor Circuit Courtroom." No objection was made to the language of the order and no further demand was made by the appellant for a jury trial. The question was not presented again until this appeal was instituted. It is the opinion of this Court, therefore, that appellant waived its right to a jury trial. "[I]f one demands a jury trial, he should demonstrate sufficient regard for the court to be diligent in his demand." *B. F. M. Buildings, Inc. v. Trice*, Ky., 464 S.W.2d 617, 620 (1971).

We turn now to the trial court's findings of fact concerning the validity of the Recall Petition. We will not discuss specifically the questions of whether the petition contained proper signatures and addresses or whether the Recall Petition was certified to the Board of Education within the 30 days required by the statute, although we find that the findings of fact of the trial court were not clearly erroneous in this regard. CR 52.01.

■ Of more concern is the fact that the signatures signed by those who circulated the petitions were not "verified by affidavit" as required by the statute. An affidavit implies the taking of an oath as to the truth of its contents. Although there is no specific prescribed formula for the administration of this oath, more must be done than was done in this case. "To make a valid oath or affirmation, there must be some overt act which shows that there was an intention to take an oath or affirmation on the one hand and an intention to administer it on the other; mere intention, not accompanied by an unambiguous act, is insufficient." 3 Am.Jur.2d *Affidavits* § 11 (1962). *See also Blackburn v. Commonwealth*, 202 Ky. 751, 261 S.W. 277 (1924);

**328**

*Monhollan v. Rice*, 287 Ky. 814, 155 S.W.2d 223 (1941). The record is clear that Ms. Thompson neither administered an oath to the circulators of the petition nor intended to do so. The affidavits were merely read and signed, then notarized. Only one circulator of the petition testified that some form of oath may have taken place; testimony of the others is clear that it did not. Therefore, the petitions were not "verified by affidavit" as required by K.R.S. 160.597.

We are reluctant to affirm the trial court and to deny to the voters the right to vote on this tax. However, we must abide by the authority of *Board of Education of Warren County v. Fiscal Court*, Ky., 485 S.W.2d 752 (1972), in which the former Court of Appeals mandated a strict compliance with the statute with regard to the sufficiency of a voters' petition. Because it is readily apparent that there was no intention on the part of either Ms. Thompson or those who signed the "affidavits" either to administer or take an oath, there is less compliance with the statute than was the case in *Warren County, supra*, and we cannot hold that there was substantial compliance with the statute.

There was no error in the trial court's failure to grant a new trial to the appellant. A later administration of an oath to the persons who had previously signed the affidavits cannot make the affidavits sufficient after the time has elapsed for filing the petitions. *Id.* at 753. Nor does the later administration of an oath constitute the "newly discovered evidence" provided for in Rule 59.01(g).

The order of the trial court is affirmed.

All concur.