Clifford CARRIER, Appellant,

v.

COMMONWEALTH OF KENTUCKY, Appellee.

No. 2002–SC–0509–DG.

Supreme Court of Kentucky.

June 17, 2004.

Rehearing Denied Sept. 23, 2004.

Linda Roberts Horsman, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Dennis W. Shepherd, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice GRAVES.

Appellant, Clifford Carrier, entered a conditional guilty plea in the Livingston Circuit Court to fifteen counts of sexual offenses against minors. He received a sentence of ten years. On appeal, the Court of Appeals affirmed the convictions, rejecting Appellant's claim that incriminating evidence contained in records obtained from his psychologist should have been suppressed, as the evidence was (1) wrongfully obtained, and (2) protected by the psychotherapist-patient privilege contained in KRE 507. This being a matter of first impression in Kentucky, we granted discretionary review. After hearing oral arguments and reviewing the record, we reverse the decision of the Court of Appeals and remand for a new trial.

The sexual offenses at issue were committed between May 1, 1990, and December 12, 1993. Although claims of sexual abuse perpetrated by Appellant were investigated in 1993, no charges were brought at that time. In January 1999, after the abuse victims reached adulthood, the county attorney filed an ex parte motion in the Livingston District Court styled "Verified Motion for Records." On the basis of a state police investigation of sodomy and sexual abuse committed by Appellant against small children, the motion sought all records pertaining to Appellant in the possession of Dr. John Runyon, Appellant's psychologist. The motion alleged that three victims had made accusations against Appellant, and that a Ms. Laverne Carrier (Appellant's ex-wife) was willing to testify that Appellant had confessed his sexual offenses to Dr. Runyon.

The motion and subsequent order read as follows verbatim:

COMMONWEALTH OF KENTUCKY
LIVINGSTON DISTRICT COURT

COMMONWEALTH OF KENTUCKY     PLAINTIFF

V.     VERIFIED MOTION FOR RECORDS

CLIFFORD L. CARRIER     DEFENDANT

Comes now the Commonwealth of Kentucky, by and through the Livingston County Attorney, and moves this Honorable Court for an Order directing the release of all records, files, documents, and all other information relating to Clifford L. Carrier, d.o.b. 10/03/26, SS# XXX–XX–XXXX, in the possession of Psychological Associates and/or Dr. John C. Runyon. As grounds for this motion, the Commonwealth states that Detective Kevin Pelphrey, Kentucky State Police, is conducting an investigation regarding sodomy and sexual abuse, by Mr. Carrier, of small children. Detective Pelphrey has the testimony of three (3) victims regarding said criminal sexual activity. Mr. Carrier advised Ms. Laverne Carrier, who is willing to testify, that he confessed his illegal sexual activity to Dr. Runyon, of Psychological Associates. The requested information is material to the Commonwealth's investigation.

Respectfully Submitted,

/s/ Billy N. Riley

Livingston County Attorney

P.O. Box 97

Smithland, KY 42081

(270) 928–2880

Verification

I hereby certify that, to the best of my knowledge and belief, the contents of the foregoing motion are true and correct.

/s/ Det. Kevin Pelphrey

COMMONWEALTH OF KENTUCKY
LIVINGSTON DISTRICT COURT

COMMONWEALTH OF KENTUCKY    PLAINTIFF

VS.                ORDER

CLIFFORD L. CARRIER        DEFENDANT

Upon motion of the Commonwealth of Kentucky, the Court being advised of the necessity of certain information in an ongoing investigation of the Commonwealth, and the Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Dr. John C. Runyon and/or Psychological Associates release to Detective Kevin Pelphrey of the Kentucky State Police, any and all files, documents, and other information in their possession or within their knowledge regarding Clifford L. Carrier.

ENTERED this the 26th day of January, 1999.

/s/ Jill Clark

Judge

CERTIFICATE OF EXECUTION

I hereby certify that the foregoing Order has been executed by personally delivering an exact copy of same to and receiving information from Mr. John C. Runyon and this the 28th day of January 1999 at 11:38 a.m.

/s/ Det. Kevin Pelphrey

Det. Kevin Pelphrey, K.S.P.

Although the motion was styled *Commonwealth v. Clifford L. Carrier*, at the time the order was issued on January 26, 1999, there was neither a case nor controversy involving Appellant appearing on the docket of the Livingston District or Circuit Court. Interestingly, neither the motion nor the order were stamped "filed" by the district court, and, in fact, the only file stamp found on the motion is by the Livingston Circuit Court dated July 6, 1999, after Appellant's indictment on June 30, 1999. Similarly, the only stamp on the district court's order reflects that it was entered by the circuit court on July 7, 1999.

In October 1999, defense counsel filed a motion in limine to suppress all evidence

obtained from the psychological records. Following the denial of that motion, Appellant accepted the conditional plea agreement, and judgment was entered accordingly.

Appellant first argues that, contrary to the Court of Appeals' conclusion, the motion for production of his psychological records falls short of both the procedural requirements and probable cause necessary for issuance of a search warrant. Asserting that the district court's order was overly broad, Appellant notes that it authorized the seizure of all files, documents, and records relating to Appellant, rather than just those documents containing evidence of his alleged "confession of sex crimes against minors." Finally, Appellant contends that his ex-wife's allegation that he told her he had confessed to the psychologist did not constitute probable cause for issuance of a search warrant.

The Court of Appeals opined that the county attorney's "Verified Motion For Records" was "essentially the equivalent of a request for a search warrant." The court reasoned further that the detective's verification of the grounds upon which the motion was sought "would meet the requirements of RCr 13.10," and that there was probable cause for issuance of the order authorizing seizure of the records. We disagree.

Section 10 of the Kentucky Constitution mandates that "[t]he people shall be secure in their persons, houses, papers and possessions, from unreasonable search and seizure; and no warrant shall issue to search any place, or seize any person or thing, without describing them as nearly as may be, nor without probable cause supported by oath or affirmation." [1] The procedural requirements for the issuance of a search warrant are set forth in RCr 13.10, which provides, in pertinent part:

> (1) Upon affidavit sufficient under Section 10 of the Kentucky Constitution and sworn to before an officer authorized to administer oaths as provided in Rule 2.02 [2] for the swearing of complaints, a search warrant may be issued by a judge or other officer authorized by statute to issue search warrants.

Kentucky courts have repeatedly held that no search warrant shall be issued unless supported by an affidavit alleging probable cause. *Beemer v. Commonwealth,* Ky., 665 S.W.2d 912, 914 (1984); *Embry v. Commonwealth,* Ky., 492 S.W.2d 929, 932 (1973); *Guth v. Commonwealth,* Ky.App., 29 S.W.3d 809 (2000). Furthermore, both the Kentucky Constitution § 10 and the Fourth Amendment require that probable cause be supported by "oath or affirmation."

▨ An oath or affirmation is a subscription to the truth of that to which it is made. An affirmation is a substitute for an oath, except that it does not invoke the Deity, where there is an expression of scruples against taking an oath. 58 Am. Jur.2d *Oath and Affirmation* § 2 (2002).

---

**1.** The Fourth Amendment to the United States Constitution similarly provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**2.** The complaint is a written statement of the essential facts constituting the offense charged. It shall be made under oath and signed by the complaining party before a judge or a person who (a) is legally empowered to administer oaths and (b) has been authorized to administer such oaths to a complaining party by written order of a judge for the county having venue of the offense charged. RCr 2.02.

"To make a valid oath or affirmation, there must be some overt act which shows that there was an intention to take an oath or affirmation on the one hand and the intention to administer it on the other; mere intention, not accompanied by an unambiguous act, is insufficient." *Bd. of Elections v. Bd. Of Educ.*, Ky.App., 635 S.W.2d 324, 327 (1982) (citations omitted). In order to have a valid statement under oath, the attention of the person to be sworn must be called to the fact that his or her statement is not a mere assertion, but must be sworn to, and he or she must do some corporal act in recognition of this. 58 Am.Jur.2d., *supra*, at § 16.

An affidavit is a written statement of fact under oath sworn to or affirmed by the person making it before some person who has authority under the law to administer oaths and officially certified by the officer under his or her seal of office. *Id.* § 3. An affidavit implies the taking of an oath as to the truth of its contents. *Bd. of Elections, supra.*

■ Here, although the county attorney filed a "Verified Motion for Records," the Court of Appeals construed it as the equivalent of an affidavit for a search warrant. However, contrary to the requirements of RCr 13.10, there is no indication that the motion was "sworn to before an officer authorized to administer oaths." This "affidavit" contains only bare allegations made by the county attorney and a certification by the detective. Notably, neither signature was even notarized. As such, the motion clearly fails to meet the procedural requirements of RCr 13.10 for an affidavit supporting a search warrant. The Constitutional demand of an oath or affirmation requires more than a mere verification of a police officer.

We note that in *Spradling v. Hutchinson*, 162 W.Va. 768, 253 S.E.2d 371 (1979), the West Virginia Supreme Court of Appeals held that there was no significant distinction between an "affirmation" and a "certification" since both are subscriptions to the truth. *Spradling*, however, concerned information contained in a police application form, wherein the statement at issue was, "I hereby certify that there are no willful misrepresentations in, or falsifications of, the above statements and answers to questions." *Id.* at 770, 253 S.E.2d 371. Here, in comparison, the detective's verification provided, "I hereby certify that, to the best of my knowledge and belief, the contents of the foregoing motion are true and correct." We perceive an important distinction between both the substance and form of the document in this case and that present in *Spradling.*

■ Furthermore, we conclude that the motion falls short of establishing probable cause for the issuance of a search warrant. Under Kentucky Constitution § 10, it is insufficient for an affiant applying for a search warrant to state his "information and belief" of the existence of facts sought to be discovered by the warrant; rather the affidavit must be supported by a statement of facts sufficient to create probable cause. *Vick v. Commonwealth*, 204 Ky. 513, 264 S.W. 1079 (1924). *See also Duncan v. Commonwealth*, 297 Ky. 217, 179 S.W.2d 899 (1944); *Byars v. United States*, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1927), *overruled on other grounds as recognized by Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

Other than Appellant's ex-wife's assertion, it does not appear from the motion that either the county attorney or the detective had any independent knowledge of Appellant's psychological treatment history with Dr. Runyon, or even that such existed. The motion is void of any information as to when the treatment oc-

curred, when Appellant allegedly confessed to Dr. Runyon, when Appellant informed his ex-wife that he had done so, or whether Dr. Runyon had ever filed a report of the misconduct. This lack of specificity likely explains why the motion sought "all records, files, documents, and all other information" relating to Appellant in the possession of Dr. Runyon. Thus, even if Detective Pelphrey's certification could be considered a valid affirmation or oath, it was not sufficient to establish probable cause supporting a warrant.

■ Appellant next argues that the Commonwealth obtained his psychological records in violation of the psychotherapist-patient privilege found in KRE 507. In fact, the Court of Appeals, relying on this Court's decision in *Mullins v. Commonwealth*, Ky., 956 S.W.2d 210, 211 (1997), held that KRS 620.050 abrogates the professional-client/patient privilege if it is used in the case of dependent, neglected or abused children. Nonetheless, Appellant contends that the provisions in KRS Chapter 620 should not be applied after the child victims have reached adulthood and no longer need protection as dependent, neglected or abused children. He focuses upon the statutory reporting requirements of KRS 620.030(1) when there is "reasonable cause to believe that a child is [as opposed to *was*] dependent, neglected or abused ...." The harm at which the statute is directed—prevention of abuse of children in an ongoing abusive relationship—is not furthered by abrogating the psychotherapist-patient privilege years later, Appellant argues, and will deter sex abusers from seeking needed treatment.

The Court of Appeals reasoned that the provisions of KRS Chapter 620 applied regardless of whether the victims were in imminent danger of abuse:

Under KRS 620.030(1) and (2), the duty to report arises when there is 'reasonable cause to believe that a child *is* dependent, neglected or abused.' (emphasis added). In the present case, that would have been at the time appellant confessed to Dr. Runyon that he had sexually abused the victims. However, KRS 620.050(2) contains no requirement that the challenged evidence be recent or relate to a recently abused or neglected child. That statute merely speaks in terms of 'evidence regarding a dependent, neglected, or abused child.' Thus, in our view, if the person had a duty under KRS Chapter 620 to report the neglect or abuse *at the time the communications were made*, whether or not the records of these communications were being sought contemporaneously, then the claimed privilege to these records is abrogated by the statute. In essence, KRS Chapter 620 is triggered not by the time when the communications (or records thereof) regarding the abuse or neglect is being sought but rather by the time the communications regarding the abuse is made. Accordingly, the trial court properly found that the records of Dr. Runyon in the instant case, although not sought until 1999, were not privileged.

While Appellant makes a valid point that the purpose of KRS 620.050 is to protect children presently in an abusive environment, he fails in his contention that once a child reaches the age of majority the statute should have no effect.

Importantly, however, KRS 620.050(2) [now (3)] does not relate to all of the professional's records pertaining to the patient, but rather only to the *report* the professional is required to file. The statute directs that the professional-patient

privilege is not a ground for "refusing to report" or for "excluding evidence" about a neglected or abused child in a proceeding resulting from a report, but it does not specify how records not reported by the professional are to be obtained. We can perceive of no manner by which these records may be obtained other than by consent or by a legally sufficient search warrant.

Rather than following the prescribed procedure of presenting facts to a Grand Jury and obtaining a subpoena for the psychologist's records, or obtaining a valid search warrant in accordance with the provision of Rules of Criminal Procedure 13.10, the Commonwealth pursued a novel course of discovery authorized neither by statute nor the Rules of Criminal Procedure[3]. While there are many exceptions to the probable cause and warrant requirements, we can conceive of no justification to permit the furtherance of a law enforcement investigation by use of legal processes in the absence of court authorization. Accordingly, we hold that the manner in which Dr. Runyon's records were obtained fails to satisfy the reasonableness requirement of the Fourth Amendment to the Constitution of the United States and Section Ten of the Constitution of the Commonwealth of Kentucky. Accordingly, we reverse the decision of the Court of Appeals and remand this matter to the Livingston Circuit Court for further proceedings consistent with this opinion.

LAMBERT, C.J., COOPER, GRAVES, JOHNSTONE, and STUMBO, J.J. concur.

KELLER, J., dissents by separate opinion in which WINTERSHEIMER, J. joins.

Dissenting opinion by Justice KELLER.

I respectfully dissent and vote to affirm the Court of Appeals because the allegation of error upon which the majority opinion reverses the judgment in this case was not preserved by Appellant for our review. The record is clear that the Appellant did not contest the procedural and legal sufficiency of the "Verified Motion for Records" either before the trial court or the Court of Appeals. Instead, he argued in the lower courts that the seizure of his psychiatric records violated his right to due process of law because the "warrant" was issued ex parte, which prevented him from asserting the psychotherapist/patient privilege prior to the issuance of the search warrant. The Appellant also moved to suppress statements he made to his psychotherapist on the basis that the exception to the asserted privilege did not apply.

## I. ANALYSIS

The Court cannot properly address whether the "Verified Motion for Records" was a sufficient "affidavit" to support the issuance of the "Order"/"warrant" because the issue was not presented to the trial court and therefore not preserved for appeal. "It goes without saying that errors to be considered for appellate review must be precisely preserved and identified in

3. The Kentucky Rules of Criminal Procedure provide the following method for initiating a prosecution.
  RCr 6.02—Use of indictment and information
  (1) All offenses required to be prosecuted by indictment pursuant to Section 12 of the Kentucky Constitution shall be prosecuted by indictment unless the defendant waives indictment by notice in writing to the circuit court, in which event the offense may be prosecuted forthwith by information.
  (2) All other offenses shall be prosecuted by indictment, information, complaint, post-arrest complaint, or, in the case of traffic offenses or fish and wildlife offenses, may be prosecuted by uniform citation.

the lower court." [1] Or, as Justice Lukowsky stated it in easily understood language, "The appellants will not be permitted to feed one can of worms to the trial judge and another to the appellate court." [2]

At no time prior to the filing of his brief in this Court did the Appellant address or challenge the sufficiency of the "affidavit" and the arguments that he did make were not broad enough to include the new ones he brings before this Court. Appellant does not seek review of this claimed error under RCr 10.26 as palpable error resulting in "manifest injustice," and the majority opinion appropriately does not find "manifest injustice" resulting from a palpable error.

In his "Supporting Memorandum for Motion in Limine," filed with the trial court, the Appellant challenged only (1) the applicability of the exception to the psychotherapist/patient privilege and (2) the fact that he was not given notice and an opportunity to be heard prior to the "compelled production" of his psychiatric records. In his "Motion to Reconsider," also filed with the trial court, Appellant stated that the "precise point of Defendant's motion . . . is whether the privilege is abrogated in the present case when there is no 'child,' no ongoing allegations of 'abuse[,]' and thus no need to protect the interests of a child which is the statutory purpose of Chapter 620 of the Juvenile Code."

To the Court of Appeals, the Appellant made the following arguments: (1) that the "Verified Motion" ("Motion") was not filed with the district court and was not filed with the circuit court until he was indicted, (2) that there was no case or controversy involving the Appellant at the time the Motion was heard, (3) that the Appellant was not notified when the Motion was to be heard, (4) that the Commonwealth should have convened a grand jury, (5) that the district court did not issue a written ruling to explain its actions, (6) that there were no exigent circumstances as no child was presently being abused because the child had reached the age of majority, (7) that the Commonwealth's actions were so egregious that they violated his right to due process of law, (8) *that the procedures were not those to obtain a search warrant,* (9) that it was unfair to seek privileged documents from third parties without notice to the owner of the privilege, (10) that the documents were not in danger of being destroyed or moved, and (11) that the exception to the privilege was not applicable. The Court of Appeals affirmed the trial court's decision that the exception applied after the victim reached the age of majority and also gratuitously addressed the Motion as an affidavit providing probable cause for the seizure of the records.

The challenges the Appellant now makes did not arise until *after* the Court of Appeals mentioned that the "Verified Motion" was akin to an affidavit for a search warrant, as evidenced by the fact that the Appellant's brief filed with this Court encompasses all the arguments made to the Court of Appeals *with the addition of the new challenges to the procedural sufficiency of the "affidavit" and the probable cause determination.*

"Ordinarily, a trial court cannot be held in error for having failed to do something it was not asked to do," [3] and where the

1. *Skaggs v. Assad, By and Through Assad,* Ky., 712 S.W.2d 947, 950 (1986) (citing *Combs v. Knott County Fiscal Court,* Ky., 283 Ky. 456, 141 S.W.2d 859 (1940); CR 76.12(4)(c)(iv)).

2. *Kennedy v. Commonwealth,* Ky., 544 S.W.2d 219, 222 (1976).

3. *Arnold v. Commonwealth,* Ky., 421 S.W.2d 366, 367 (1967); *Hatton v. Commonwealth,* Ky., 409 S.W.2d 818, 820 (1966) ("A nonrul-

grounds stated on appeal as the basis for the exclusion of evidence were different from the grounds asserted at the trial, and the grounds urged on appeal were never brought before the trial court, the reviewing court is precluded from considering them.[4]

This Court expressed similar views in *Richardson v. Commonwealth,*[5] when the defendant, to suppress a letter he had written, stated grounds on appeal that were different from those asserted at the trial and were never brought before the trial court[:][6]

> "An objection made in the trial court will not be treated in the appellate court as raising any question for review which is not within the scope of the objection as made, both as to the matter objected to and as to the grounds of the objection, so that the question may be fairly held to have been brought to the attention of the trial court."[7]

In *Henson v. Commonwealth,*[8] the defendant challenged the constitutionality of his confession. At trial, his grounds were that police officers obtained his confession by coercion. On appeal the defendant asserted that the confession should have been suppressed because it was obtained in violation of the Fifth and Fourteenth Amendments to the United States Constitution and § 11 of the Kentucky Constitution. This Court refused to review the error because the defendant "failed to argue before the trial court that his confession was inadmissible for the reason he now alleges on appeal."[9]

Most significantly, in *Todd v. Commonwealth,*[10] a case that is a mirror image of the present case, the defendant argued to the trial court that the evidence obtained from his residence should be suppressed because the police entered without exigent circumstances and the affidavit supporting the subsequently obtained warrant was inadequate. On appeal, the defendant argued that he was denied due process of

---

ing cannot be erroneous when the issue has not been presented to the trial court for a decision.").

4.  *Gabow v. Commonwealth,* Ky., 34 S.W.3d 63 (2000) (where a defendant who has specified his grounds for an objection at trial cannot assert new grounds on appeal); *Grundy v. Commonwealth,* Ky., 25 S.W.3d 76 (2000) (where the defendant could not use the guise of developing an argument to present a theory on appeal that differed from theory asserted at the trial court level); *Port v. Commonwealth,* Ky., 906 S.W.2d 327 (1995) (where defendant cannot pursue one theory at trial and another on appellate review); *Commonwealth v. Duke,* Ky., 750 S.W.2d 432 (1988) (where defendant cannot pursue one theory at trial and another on appellate review); *Charles v. Commonwealth,* Ky., 634 S.W.2d 407 (1982) (where grounds for objection on appeal were not properly presented as they differed from the grounds asserted at trial); *Daugherty v. Commonwealth,* Ky., 572 S.W.2d 861 (1978) (where different grounds of error from those presented to trial court are not

properly preserved); *Richardson v. Commonwealth,* Ky., 483 S.W.2d 105 (1972) (where appellate court was precluded from considering grounds for exclusion of evidence that were never presented to trial court); *Shelton v. Commonwealth,* Ky.App., 928 S.W.2d 817 (1996) (where defendant's arguments on appeal were not addressed to extent they differed from those made at trial).

5.  Ky., 483 S.W.2d 105 (1972).

6.  *Id.* at 106.

7.  *Id.* (quoting 24 C.J.S. Criminal Law § 1677 (date omitted)).

8.  Ky., 20 S.W.3d 466 (1999).

9.  *Id.* at 470 (citing *McDonald v. Commonwealth,* Ky., 554 S.W.2d 84 (1977)) (The court was "not at liberty to review alleged errors when the issue was not presented to the trial court for decision.").

10. Ky., 716 S.W.2d 242 (1986).

law by the admission of the evidence obtained through a warrantless search of his residence.

This Court concluded that:

> This latter concern was never presented to the trial court for a ruling; thus, accordingly there was no action thereon for appellate review. "The policy of RCr 9.22 and 10.12 is to require a defendant in a criminal case to present to the trial court those questions of law which may become issues on appeal. The appellate court reviews for errors, and a nonruling is not reviewable when the issue has not been presented to the trial court for decision." *Turner v. Commonwealth*, Ky., 460 S.W.2d 345, 346 (1970). "Appellate practice is a science. Members of the legal profession are required to know and carefully comply with the rules pertaining thereto." *White v. Hardin County Board of Education*, Ky., 307 S.W.2d 754, 756 (1957).[11]

Like the defendant in *Todd*, Appellant here argued due process violations to the trial court and the Court of Appeals and now makes affidavit and probable cause sufficiency arguments in his appeal to this Court. Thus, contrary to the belief held by the majority opinion, issues relating to the insufficiency of an affidavit are not inherently connected with due process claims such that the Appellant should "be permitted to feed one can of worms to the trial judge and another to the appellate court."[12]

This reasoning especially holds true when, in this instance, the Appellant had the "burden of attacking the warrant and thus the seizure."[13] As the Appellant had the burden of proving that the affidavit was insufficient and it appearing that the Appellant did not bring this issue to the attention of the trial court *or* the Court of Appeals, the Appellant waived his right to have this issue considered in this appeal.

"Violations of constitutional [and other rights] may be waived by failure to make timely and appropriate objection," but "in an aggravated case involving violations of such proportions" that a defendant is deprived of due process, "the appellate court may grant relief notwithstanding failure to make proper objection."[14] "In the past, this Court has held that a failure to properly preserve by objection even those alleged errors with constitutional dimensions means that this Court will not review them," since "the constitutional nature of Appellant's claim does not automatically elevate any alleged error to the point where this Court should review it under RCr 10.26."[15] "Just as [the Court should]

---

11. *Id.* at 248.

12. *Kennedy v. Commonwealth*, Ky., 544 S.W.2d 219 (1977).

13. 8 LESLIE W. ABRAMSON, KENTUCKY PRACTICE § 18.1 (3d ed.1997); *Bailey v. Commonwealth*, Ky., 464 S.W.2d 232 (1971)("When the validity [of a search warrant] is challenged, the burden of producing evidence to the contrary is upon the challenger."); *Boles v. Commonwealth*, Ky., 304 Ky. 216, 200 S.W.2d 467 (1947); *Combs v. Commonwealth*, Ky., 242 Ky. 793, 47 S.W.2d 725 (1932); *Terrell v. Commonwealth*, Ky., 244 S.W. 703 (1922).

14. *Futrell v. Commonwealth*, Ky., 437 S.W.2d 487, 488 (1969); *see also Sanders v. Commonwealth*, Ky., 609 S.W.2d 690 (1980); *Burch v. Commonwealth*, Ky., 555 S.W.2d 954 (1977); *Ferguson v. Commonwealth*, Ky., 512 S.W.2d 501 (1974); RCr 10.26 (where the court may review a new claim if failure to do so would cause manifest injustice).

15. *Henson v. Commonwealth*, Ky., 20 S.W.3d 466, 470–471 (1999) (citing *Turner v. Commonwealth*, Ky., 460 S.W.2d 345 (1970) (right to counsel issue); *Arnold v. Commonwealth*, Ky., 433 S.W.2d 355 (1968) (confrontation clause issue presented in a *Bruton*-like context)).

decline to dine upon this new can of worms [regarding the sufficiency of the affidavit and probable cause] ... [the Court should also] decline to open a third can of worms by grossly expanding the scope of our palpable error review." [16]

However, since the analysis of the sufficiency of the affidavit contained within the majority opinion is as equally vexing as this Court's willingness to entertain issues not preserved for our review, I also write separately on the sufficiency of the "affidavit" and the probable cause determination.

According to RCr 13.10, a judge may issue a search warrant upon an affidavit sufficient under § 10 of the Kentucky Constitution and sworn to before an officer authorized to administer oaths. [17]

> "[A]ffidavits for search warrants ... must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion .... Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area .... *[W]hen a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than commonsense, manner.*" [18]

This commonsense interpretation was used in *Clark v. Commonwealth,*[19] where the highest court in Kentucky at the time determined that a search warrant was valid when it was based on a complete and proper affidavit even though the maker of the affidavit testified that he did not swear to it. Therefore, the fact that the affidavit in Appellant's case does not appear to have been notarized, although a violation of RCr 13.10, is not a violation of such proportions that the Appellant was deprived of due process.

With regard to the new challenge to the probable cause determination, an affidavit provides a sufficient foundation for probable cause when it sets forth facts establishing a substantial basis for concluding that a search would uncover evidence of wrongdoing.[20]

The affidavit stated that Detective Kevin Pelphrey obtained statements from three victims that they were sexually abused by the Appellant. It also stated that Laverne Carrier, Appellant's former wife, was willing to testify that Appellant told her that he confessed his illegal sexual activity to Dr. Runyon. Based on Laverne Carrier's statement, corroborated by the victims' statements that Det. Pelphrey previously obtained, the Commonwealth sought a search warrant to obtain all of Dr. Runyon's files, documents, and other information relating to Appellant.

According to *Embry v. Commonwealth,*[21] "[t]he general rule has long been that an affidavit for a search warrant based on information furnished by a named individual is ordinarily sufficient to support the warrant." [22] The information about Appellant's confession to Dr. Runyon was provided by Laverne Carrier, a

---

**16.** *Henson,* 20 S.W.3d at 471.

**17.** RCr 13.10(1).

**18.** *Gossett v. Commonwealth,* Ky., 426 S.W.2d 485, 486 (1968) (quoting *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)) (emphasis added).

**19.** Ky., 418 S.W.2d 241 (1967).

**20.** *Beemer v. Commonwealth,* Ky., 665 S.W.2d 912, 914 (1984); *see Crayton v. Commonwealth,* Ky., 846 S.W.2d 684 (1992).

**21.** Ky., 492 S.W.2d 929 (1973).

**22.** *Id.* at 931; *see also Emberton v. Commonwealth,* Ky., 269 S.W.2d 206 (1954); *Mattingly v. Commonwealth,* Ky., 310 Ky. 561, 221 S.W.2d 82 (1949).

named individual. Furthermore, the victims' statements supported Laverne Carrier's statement and provided a substantial basis for the belief that evidence of abuse would be found in the psychiatric records. Thus the "affidavit" was sufficient.

The majority opinion criticizes the "affidavit" because the information about the confession is not based on the officer's or Commonwealth Attorney's independent knowledge. I would point out that second-hand information, i.e., hearsay, may provide a basis for probable cause if the source of the hearsay is credible and "there is a factual basis for the information furnished." [23] Laverne Carrier was previously married to the Appellant and would have some knowledge of his private matters. Although one may question the veracity of the statement, given that the two were no longer married, her information, however, was corroborated by the independent statements previously given by the three victims.

In determining that the evidence should be suppressed, the majority deviates from *Crayton v. Commonwealth* [24] and completely overlooks the good faith exception adopted therein: "[W]hen it appears that the affidavit was made in good faith but the warrant erroneously issued by virtue of judicial error, neither the Constitution nor sound public policy requires suppression of the evidence." [25]

In this instance, the statement by a named individual, who would be privy to knowledge of the Appellant's private matters, was corroborated by evidence the detective had already gathered. Based on this information, the detective was reasonable in believing that evidence of the abuse would be contained in the psychiatric files.

Alternatively, even under the majority's analysis, suppression of the evidence does not serve the legitimate objective of evidentiary suppression because suppression after the affidavit has been subjected to judicial scrutiny "can have no deterrent effect upon police misconduct." [26]

Though the description in the "affidavit" and the "warrant" was broad enough to encompass privileged items, the executing officer's discretion was sufficiently limited in that he or she would reasonably know what items were to be seized from reading the description.[27] Had any items to which the privilege still applied been seized, however, "complete suppression of all materials [would not have been] appropriate. The proper remedy [would have been] to return any [privileged] materials." [28] The Appellant does not, however, allege that any of the statements or documents obtained from Dr. Runyon concern anything

**23.** 8 LESLIE W. ABRAMSON, KENTUCKY PRACTICE § 18.27 (3d ed.1997); KRE 1101(d)(5) (where the Kentucky Rules of Evidence do not apply in proceedings for issuance of search warrants).

**24.** Ky., 846 S.W.2d 684 (1992).

**25.** *Id.* at 688.

**26.** *Id.*

**27.** *New York v. P.J. Video, Inc.,* 475 U.S. 868, 106 S.Ct. 1610, 89 L.Ed.2d 871 (1986); *Wilson v. Commonwealth,* Ky., 621 S.W.2d 894 (1981).

**28.** *United States v. Skeddle,* 989 F.Supp. 890, 897 (N.D.Ohio 1997) (citing *Weatherford v.*

*Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) (rejecting argument that intrusion into attorney-client communications constituted per se violation of right to fair trial and effective assistance of counsel); *National City Trading Corp. v. United States,* 635 F.2d 1020, 1026 (2d Cir.1980) ("[t]o the extent that the files obtained here were privileged, the remedy is suppression and return of the documents in question, not invalidation of the search") (citations omitted); *United States v. Mittelman,* 999 F.2d 440, 443 (9th Cir.1993) ("separate legal rules are not necessary for remedying [law office] searches when they exceed the scope of the warrant"); *In re Grand Jury Subpoenas Dated Dec. 10, 1987,* 926 F.2d 847, 858 (9th Cir.1991)

other than a dependent, neglected or abused child. Therefore, Det. Pelphrey made the "affidavit" in good faith, it provided a sufficient basis for probable cause, and no manifest injustice is present to justify the result or review provided in the majority opinion.

The issues that were preserved by the Appellant and entitled to this Court's review are (1) whether the exception to the psychotherapist/patient privilege applies in this case and (2) whether the ex parte nature of the "search warrant" proceedings constituted a deprivation of the Appellant's due process rights.

Although I agree with the majority that the exception extends past the time when the child victim reaches the age of majority, the scope of the exception is broader than that expressed in the majority opinion.

The majority states that only the report would be exempt from the privilege. In addition to the information that would be contained in the report required under KRS 620.030, the exception contained in KRS 620.050(2) plainly states that it also extends to "evidence regarding a dependent, neglected, or abused child or the cause thereof." [29] The majority opinion also indicates that the exception only operates in a proceeding resulting from a report. Appellant's case did not result from a report yet the majority applies the exception. To resolve this conflict, I would point out that the exception is not so limited as set forth in the majority opinion because the statute clearly provides that the exception applies not only "in any judicial proceeding[ ] resulting from a report pursuant to this section," but also in "any criminal proceeding in District or Circuit Court regarding a dependent, neglected or abused child." [30]

Although not addressed in the majority opinion, the Appellant asserts that he was deprived of due process of law because he was not given notice and an opportunity to assert the psychotherapist/patient privilege prior to the issuance of the search warrant. Since the Appellant was provided with an opportunity to assert the privilege subsequent to the execution of the search warrant, the Appellant was not deprived of due process of law by the ex parte proceedings.

> [D]ue process does not categorically require a hearing before one is initially deprived of a[n] ... interest. Instead, the timing of a hearing (i.e., whether a hearing is required pre- or post-deprivation) is determined on a sliding scale basis that requires balancing the impact the taking has on the individual and the state interest being advanced.[31]

In the Appellant's case, he was able to assert the privilege after the psychiatric records were seized. Because "[t]he issuance of a search warrant is [not] tantamount to a finding that all professional privileges are waived so as to preclude an assertion of those privileges after the

(Fourth Amendment exclusionary rule reaches only to items unlawfully seized, not those which were seized lawfully); *United States v. Chuang*, 696 F.Supp. 910, 915 (S.D.N.Y.1988) ("the fact that a search involved privileged documents does not render the entire search unreasonable, at least where there was good reason to believe that documents that could legitimately be searched would be found")); *cf. Crayton v. Commonwealth*, Ky., 846 S.W.2d 684, 688 (1992) ("Try as we might ... we are unable to discover any deterrent effect in the suppression of evidence obtained pursuant to a search warrant when the police are acting in good faith."); *Beemer v. Commonwealth*, Ky., 665 S.W.2d 912 (1984).

**29.** KRS 620.050(2).

**30.** KRS 620.050(2).

**31.** *United States v. Calor*, 172 F.Supp.2d 900, 906 (E.D.Ky.2001).

search," [32] a hearing prior to the issuance of the "search warrant" was not necessary. When items which may or may not be privileged are seized, due process concerns are satisfied if the defendant has an opportunity to be heard, "on a document-by-document[/statement-by-statement basis,] with regard to [his] contention that various documents [and statements] are not covered by the ... exception to the privilege." [33]

While the proceedings for a search warrant are necessarily ex parte,[34] a warrant may not issue without a neutral and detached magistrate " 'to weigh correctly the strength of the evidence ... against the individual's interests in protecting his own liberty." ' [35] This safeguard coupled with the opportunity for the Appellant to be heard following the execution of the warrant fully satisfies any due process concerns. And that is exactly what occurred in this case; Appellant was not denied due process.

## II. CONCLUSION

For the foregoing reasons I respectfully dissent and would affirm the Court of Appeals.

WINTERSHEIMER, J., joins this dissenting opinion.

the [privilege] issue in an adversary proceeding is available at the request of the interested party.").

---

**32.** *People v. The Superior Court of Los Angeles County*, 37 Cal.App.4th 1757, 44 Cal.Rptr.2d 734, 742 (1995).

**33.** *United States v. Skeddle*, 989 F.Supp. 890, 898 (N.D.Ohio 1997); *Heller v. New York*, 413 U.S. 483, 492, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973) (The seizure of material for the purpose of preserving it as evidence, "pursuant to a warrant [ ] issued after a determination of probable cause by a neutral magistrate, [is constitutionally permissible if] following the seizure, a prompt judicial determination of

**34.** *United States v. Barone*, 584 F.2d 118, 120 (6th Cir.1978).

**35.** 8 LESLIE W. ABRAMSON, KENTUCKY PRACTICE § 18.51 (3d ed.1997) (quoting *Steagald v. United States*, 451 U.S. 204, 212, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981)).