DAVIESS COUNTY PUBLIC LIBRARY TAXING DISTRICT, Appellant,

v.

Gary M. BOSWELL; William Kuegel; Daniel F. Ebelhar; and Charlotte Burdette, Appellees,

and

J. Michael Libs, Daviess County Clerk, Appellant,

v.

Gary M. Boswell; William Kuegel; Daniel F. Ebelhar; and Charlotte Burdette, Appellees.

Nos. 2004–CA–002624–MR, 2005–CA–000004–MR.

Court of Appeals of Kentucky.

Dec. 16, 2005.

Rehearing Denied Feb. 10, 2006.

Allen W. Holbrook, Owensboro, KY, for appellant/Daviess County Public Library Taxing District.

Robert M. Kirtley, Owensboro, KY, for appellant/Daviess County Clerk, J. Michael Libs.

Steven S. Crone, Owensboro, KY, for appellees.

Before BARBER, BUCKINGHAM, and JOHNSON, Judges.

## OPINION

BUCKINGHAM, Judge.

The Daviess County Public Library Taxing District and Daviess County Clerk J. Michael Libs appeal from an amended order and judgment of the Daviess Circuit Court instructing Libs to accept the tax protest petitions sought to be filed by the appellees and to follow the procedures set forth in KRS[1] 132.017. The petitions challenged the Library's increase on ad valorem property taxes that would produce in excess of 4% over the revenue produced by the compensating tax rate as defined in KRS 132.010(6). The appellees are taxpayers and real property owners in the library taxing district.

The appellants argue that the petitions were not timely filed, failed to specify "that portion" of the rate subject to recall election, and specified an incorrect tax rate. They ask this court to reverse and remand the circuit court judgment with instructions that the appellees' complaint be dismissed and the Library's increased tax rate be reinstated retroactive to September 7, 2004. We conclude the circuit court ruled correctly, and we thus affirm.

The Library is an independent taxing district authorized by statute. Beginning in April 2002, it held public meetings to discuss the adequacy of the McCreary Avenue library facility in Owensboro. On July 16, 2003, it proposed a project that would improve the facility according to state library standards. That project was estimated to cost $19 million and required an ad valorem real property tax increase of 64% over the compensating rate.[2]

The Library later reduced the scope of the project so that the revised project's cost was $14 million. On January 21, 2004, the Library announced the project and its cost in the Owensboro Messenger Inquirer, which is the primary newspaper circulated in the area. The revised project required an ad valorem real property tax increase of nearly 27%.[3]

KRS 132.023(3)(a) states:

That portion of a tax rate levied by an action of a tax district, other than the state, counties, school districts, cities, consolidated local governments, and urban-county governments which will produce revenue from real property, exclusive of revenue from new property, more than four percent (4%) over the amount of revenue produced by the compensating tax rate defined in KRS 132.010 shall be subject to a recall vote or reconsideration by the taxing district, as provided for in KRS 132.017, and shall be advertised as provided for in paragraph (b) of this subsection.

KRS 133.185 provides, in pertinent part, that "no tax rate for any taxing district imposing a levy upon the county assessment shall be determined before the assessment is certified by the Revenue Cabinet to the county clerk[.]" Because the Revenue Cabinet had not certified the assessment when the Library announced the project and its cost in January 2004, the Library could not formally announce the new rate at that time.

---

1. Kentucky Revised Statutes.

2. The compensating rate was 5.6 cents per $100 of assessed property value. The new rate would have been 9.1 cents per $100.

3. The Library set the property tax rate at 7.1 cents per $100 of assessed property value.

Between January and July 2004, numerous articles were published about the project and the increased tax rate necessary to fund it. The Library held meetings to discuss the project and the anticipated tax rate. In early July 2004, the Library began publishing notices that it was going to hold a public meeting concerning the proposed tax rate. However, the meeting held on July 21, 2004, resulted in no action being taken because the assessments had not yet been certified under KRS 133.185. The Revenue Cabinet did not certify the assessment until July 29, 2004.

On July 31 and August 1, 2004, the Library published legal notice pursuant to KRS 132.023 that a public hearing was scheduled for August 9, 2004. At that hearing the Library passed the 7.1 cents per $100 rate. The Library published another public notice on August 14, 2004, that announced the 7.1 cents per $100 rate had passed and that the rate would produce over 4% more revenue than that produced by the compensating rate.

At a press conference on September 3, 2004, the Library announced it was planning to lower the rate because of a reduced interest rate, deferring purchases, use of inmate labor, and other cost reductions. After a public meeting on September 7, 2004, notice of which was published two days prior, the Library set the new rate at 6.6 cents per $100. The new rate was published in the newspaper on September 8, 2004. On September 11 and 12, the Library published notice of a public hearing scheduled for September 22, 2004. At the hearing the Library formally adopted the 6.6 cents per $100 rate.[4] The new rate was published in the newspaper on September 25, 2004. That notice informed the public that the rate would produce more than 4% over the amount of revenue produced by the compensating rate and that the rate was subject to a recall vote.

The appellees tendered recall petitions to County Clerk Libs on September 21, 2004. The petitions sought suspension of the 7.1 cents per $100 rate until it could be placed on the ballot and submitted to the voters. The appellees believed they had met the requirements of the statute by gathering the signatures of at least 10% of the voters who participated in the last presidential election.

Citing KRS 118.365(7), Libs refused to accept the petitions. He claimed that pursuant to the statute the petitions had to be delivered to him by the second Tuesday in August, which was August 10, 2004. Since the petitions were delivered to him on September 21, 2004, Libs claimed he could not accept them or place them on the ballot during the November 2, 2004 regular election.

The petitions made no mention of either the 4% requirement or "that portion" of the rate that was greater than 4% more revenue than the previous year's rate. *See* KRS 132.023(3)(a). Further, the petitions referred to the 7.1 cents per $100 rate passed on August 9, 2004, not the 6.6 cents per $100 rate passed on September 22, 2004.

On October 1, 2004, the appellees filed a civil complaint in the Daviess Circuit Court pursuant to KRS 418.040 for a declaration of their rights under KRS 132.017 and for injunctive relief. The parties thereafter filed cross-motions for summary judgment. On December 2, 2004, the circuit court entered an order and judgment denying the Library's motions and directing Libs

---

4. The new rate was 1.0 cent higher than the previous year's rate and constituted an 18% increase.

to accept the petitions and proceed pursuant to KRS 132.017.

The Library then filed a motion to alter, amend, or vacate the previous order, stating that the court had omitted reference to the 15–day provision for the Library to adjust the tax rate under KRS 132.017(1)(b). The court granted that motion and entered an amended order fully reflecting the requirements of the statute. Separate appeals by the Library and by Libs followed.[5]

KRS Chapter 132 is entitled "Levy and Assessment of Property Taxes." Prior to its 2005 amendment KRS 132.017 provided in pertinent part as follows:

(1) (a) That portion of a tax rate levied by an ordinance, order, resolution, or motion of a county fiscal court, district board of education, or legislative body of a city, urban-county government, consolidated local government, or other taxing district subject to recall as provided for in KRS 68.245, 132.023, 132.027, and 160.470, shall go into effect forty-five (45) days after its passage. If during the forty-five (45) days next following the passage of the order, resolution, or motion, a petition signed by a number of registered and qualified voters equal to ten percent (10%) of the voters voting in the last presidential election is presented to the county clerk or his authorized deputy protesting against passage of the ordinance, order, resolution, or motion, the ordinance, order, resolution, or motion shall be suspended from going into effect until after the election referred to in subsection (2) of this section.... The county clerk shall make the conclusive determination of whether the petition contains enough signatures of qualified voters

to suspend the effect of the order or resolution.

(b) The county fiscal court, district board of education, or legislative body of a city, urban-county government, consolidated local government, or other taxing district may cause the cancellation of the election by reconsidering the ordinance, order, resolution, or motion and amending the ordinance, order, resolution, or motion to levy a tax rate which will produce no more revenue from real property, exclusive of revenue from new property as defined in KRS 132.010, than four percent (4%) over the amount of revenue produced by the compensating tax rate defined in KRS 132.010 from real property. The action by the county fiscal court, district board of education, legislative body of a city, urban-county government, consolidated local government, or other taxing district shall be valid only if taken within fifteen (15) days following the date of the presentation of the petition.

(2) (a) If an election is necessary under the provisions of subsection (1) of this section, the county fiscal court, legislative body of a city, urban-county government, consolidated local government, or other taxing district shall cause to be submitted to the voters of the county, district, consolidated local government, or urban-county at the next regular election, the question as to whether the property tax rate shall be levied. The question shall be submitted to the county clerk not later than the second Tuesday in August preceding the regular election. The question shall be so framed that the voter may by his vote answer "for" or "against." If a majority of the votes cast upon the question oppose its pas-

---

**5.** The two appeals have been consolidated for our review.

sage, the order, resolution, or motion shall not go into effect. If a majority of the votes cast upon the question favor its passage, the order, resolution, or motion shall go into effect.

KRS 118.365(7) states that "[P]etitions for recall elections or elections on public questions shall be filed as required with the county clerk not later than the second Tuesday in August preceding the day fixed by law for holding a general election."

■ The appellants allege three main errors on the part of the circuit court. Each argument involves a matter of statutory interpretation. "The interpretation of a statute is a matter of law." *Commonwealth v. Gaitherwright,* 70 S.W.3d 411, 413 (Ky.2002). The construction and application of statutes is interpreted *de novo* without deference to the interpretations adopted by the lower courts. *Wheeler & Clevenger Oil Co., Inc. v. Washburn,* 127 S.W.3d 609, 612 (Ky.2004).

■ "The proper standard of review of a question of law does not require the adoption of the decision of the trial court as to the matter of law, but does involve the interpretation of a statute according to its plain meaning and its legislative intent." *Hardin County Schools v. Foster,* 40 S.W.3d 865, 868 (Ky.2001).

The appellants' first argument is that the court erred by ordering County Clerk Libs to accept the petitions because Libs incorrectly applied the second Tuesday in August deadline rather than the 45–day deadline. In connection with this argument, the appellants assert that the court ignored KRS 118.365(7) altogether, that the court created a non-existent conflict within KRS 132.017, and that the court wrongly assumed the petition efforts could only start after the passage of the tax rate. We will address the three sub-arguments.

■ Concerning the appellants' assertion that the court ignored KRS 118.365(7), the appellants argue that the statute plainly provides that petitions for recall elections must be filed not later than the second Tuesday in August preceding the day fixed by law for holding a general election. Since the petitions in this case were not filed until September 21, 2004, the appellants maintain that the petitions were not timely tendered for filing. While the appellants correctly read KRS 118.365(7), a statute within the chapter concerning the conduct of elections, they overlook the specific statutory provisions concerning recall elections involving the levy and assessment of property taxes that are set forth in KRS 132.017. The provisions of that statute clearly provide that the new tax rate shall not go into effect until after a recall election when a petition has been filed within 45 days following the passage of the tax. *See* KRS 132.017(1)(a). We conclude that this more specific statute governing the levy and assessment of property taxes controls over the general statute in KRS 118.365(7). *See Parts Depot, Inc. v. Beiswenger,* 170 S.W.3d 354, 361 (Ky.2005).

■ The appellants' second argument concerning the timeliness of the petitions is that the court created a non-existent conflict within KRS 132.017. The court determined that there was a conflict between KRS 132.017(1)(a) and KRS 132.017(2)(a). The court noted that KRS 132.017(2)(a) requires that the question as to whether the property tax rate shall be levied shall be submitted by the taxing authority to the county clerk not later than the second Tuesday in August preceding the regular election. The court stated that this portion of the statute conflicted with the appellees' right under KRS 132.017(1)(a) to submit protest petitions within 45 days after passage of the tax rate because the rate was approved only

one day prior to the August 10 deadline for the Library to submit the question to the clerk. The court concluded that the only duty imposed upon the appellants was to present their petitions within 45 days after passage of the tax and that the appellants had apparently complied with that requirement.

KRS 132.017(1)(a) allows 45 days following the passage of the tax for a recall petition to be filed. That portion of the statute also requires the county clerk to make the conclusive determination of whether the petition contains enough signatures of qualified voters to suspend the effect of the tax until an election can be held. *Id.* KRS 132.017(2)(a) provides in part that, if an election is necessary, then the taxing authority shall cause the question as to whether the property tax rate shall be levied to be submitted to the county clerk not later than the second Tuesday in August preceding the regular election.

The tax was passed on August 9, 2004, and the second Tuesday in August preceding the next regular election was the following day, August 10, 2004. The appellees had 45 days from August 9, 2004, in which to file petitions. Their petitions were filed on September 21, 2004, 43 days after August 9, 2004. Thus, the petitions were timely filed.

Once the petitions were filed, the county clerk was required to determine whether they contained enough signatures of qualified voters to suspend the effect of the tax until an election could be held. *See* KRS 132.017(1)(a). Thereafter, it was incumbent upon the taxing district (Library) to submit the question to the county clerk not later than the second Tuesday in August preceding the next regular election. *See* KRS 132.017(2)(a). Because that date had passed, the circuit court correctly determined that the second Tuesday in August

preceding a regular election that will occur after the protest petitions were presented to the clerk is August 8, 2006. As the court noted, the "next regular election," as applied to the facts of this case, is the November 2006 election. In short, we conclude the circuit court correctly ruled that the appellees had 45 days following August 9, 2004, in which to file their petitions and that the petitions were timely filed.

The appellants' third sub-argument is that the court wrongly assumed the petition efforts could only start after the passage of the tax rate. They maintain the appellees knew that a new tax rate would be passed and that nothing stopped them from preparing the petitions to be ready for filing on the day after the tax was passed. While this may be true, it overlooks the fact that the appellees had 45 days following the passage of the tax in which to file their petitions. *See* KRS 132.017(1)(a).

■ The appellants' second argument is that the petitions were invalid on their face. The petition form stated in pertinent part as follows:

Pursuant to KRS 132.017, the undersigned protest the property tax increase passed by the Daviess County Library Board/Daviess County Library Taxing District on or about August 9, 2004, whereby the tax rate was increased to 7.1 cents per $100.00 of assessed value. We ask that an election be held to determine whether that property tax rate should be levied.

The appellants correctly note that the right of recall is limited only to that portion of the rate that produces 4% more revenue than the previous year's rate. They argue that the recall petitions here identified the entire rate of 7.1 cents per $100 and did not identify the fact that the

recall was only limited to "that portion" of the rate over 4%. *See* KRS 132.023(3)(a).

KRS 132.017 places few specific requirements on the form of the petition. It requires only that the petition protest "against passage of the ordinance, order, resolution, or motion" that increased the tax rate. Here, the appellees specified the taxing authority and the tax increase passed by that authority. We conclude the petition was not invalid on its face even though it did not specify "that portion" of the rate subject to recall.

■ The appellants' final argument is that the recall petitions were defective and moot because they identified the old rate of 7.1 cents per $100 rather than the amended rate of 6.6 cents per $100. They argue that once the Library changed the rate, the appellees' petition became moot. The circuit court ruled that the petitions were not rendered moot by the lowering of the rate because "such an interpretation would lead to absurd results with one tax levy followed by a protest petition, a second tax levy with yet another protest petition, etcetera." We agree.

■ To accept the appellants' argument would allow taxing districts to evade recall elections by chicanery. Such would defeat legislative intent to allow citizen challenges to tax increases of this nature. "All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature[.]" Unless directed otherwise, courts interpret election statutes liberally in favor of citizens whose right to vote they tend to restrict. *See Queenan v. Mimms*, 283 S.W.2d 380, 382 (Ky.1955), and *Greene v. Slusher*, 300 Ky. 715, 722, 190 S.W.2d 29, 33 (1945). Thus, we agree with the court that the petitions complied with the statute and did not become moot when the Library lowered its rate to 6.6 cents per $100.

The judgment of the Daviess Circuit Court is affirmed.

ALL CONCUR.