The PETITION COMMITTEE, Acting BY AND THROUGH A MAJORITY OF ITS MEMBERS, namely, Loretta Belhasen, Todd Meade and Janice Hammond; Loretta Belhasen, Individually as Qualified Voters of Johnson County; Loretta Belhasen, As Member of the Petition Committee; Todd Meade, Individually as Qualified Voters of Johnson County; Todd Meade, As Member of the Petition Committee; Janice Hammond, Individually as Qualified Voters of Johnson County; and Janice Hammond, As Member of the Petition Committee, Appellants

v.

BOARD OF EDUCATION OF JOHNSON COUNTY, KENTUCKY; Sallee Conley Holbrook, in her Official Capacity as Johnson County Clerk; Todd Conley, As Member of the Petition Committee; Lynn Turner, As Member of the Petition Committee; and Darrell Preston, Appellees

NO. 2015–CA–000449–MR

Court of Appeals of Kentucky.

JUNE 24, 2016; 10:00 A.M.

Discretionary Review Denied by Supreme Court February 9, 2017.

BRIEFS AND ORAL ARGUMENT FOR APPELLANTS: Nelson T. Sparks, Louisa, Kentucky

BRIEF FOR APPELLEE JOHNSON COUNTY BOARD OF EDUCATION: Kevin A. Osborne, Michael J. Schmitt, Jonathan C. Shaw, Paintsville, Kentucky

ORAL ARGUMENT FOR APPELLEE JOHNSON COUNTY BOARD OF EDUCATION: Jonathan C. Shaw, Paintsville, Kentucky

BEFORE: ACREE, CHIEF JUDGE; J. LAMBERT AND THOMPSON, JUDGES.

*OPINION AND ORDER*

THOMPSON, JUDGE:

This appeal was filed by and through a majority of the members of a voter recall petition committee, Loretta Belhasen, Todd Meade, and Janice Hammond and by Belhasen, Meade and Hammond individually and as qualified voters of Johnson County (the petitioners). The Johnson Circuit Court granted summary judgment to the Board of Education of Johnson County declaring that the Johnson County Clerk erred in certifying a tax recall petition challenging the Board's vote to in-

crease the Johnson County School District's tax rate.

The circuit court found the petition contained only 155 valid signatures; the affidavit of the tax recall petition committee failed to expressly list an address for future service on the committee; and the Johnson County Clerk failed to publish notice of the tax recall in a newspaper of general circulation in Johnson County. The primary issue presented is whether substantial compliance with the statutory procedures to qualify a board of education's tax levy for the ballot by recall vote is sufficient.

The parties do not dispute that Kentucky Revised Statutes (KRS) 132.017 and KRS 160.597 set forth the requirements to qualify a board of education's tax levy for the ballot by recall vote. The process is commenced when five qualified voters residing in the school district levying the tax file an affidavit with the county clerk stating they constitute the petition committee and will be responsible for circulating the petition and for its filing. KRS 132.017(2)(b) and KRS 160.597(1)(b). The affidavit "shall state their names and addresses and specify the address to which all notices to the committee are to be sent." *Id.* KRS 132.017(2)(b)(2) and KRS 160.597(1)(b)(2) provide that the clerk shall:

> At the time of the filing of the affidavit, notify the petition committee that the clerk will publish a notice identifying the tax levy being challenged and providing the names and addresses of the petition committee in a newspaper of general circulation within the county, if such publication exists, if the petition committee remits an amount equal to the cost of publishing the notice determined in accordance with the provisions of KRS 424.160 at the time of the filing of the affidavit. *If the petition commit-*

> *tee elects to have the notice published,* the clerk shall publish the notice within five (5) days of receipt of the affidavit[.] [Emphasis added].

KRS 424.160, referenced within the statutes above, establishes the requirements for newspaper advertisements required by law.

In addition to addressing the contents and publication of the affidavit, both statutes set forth the requirements for the petition that must be filed within the same forty-five day time frame. KRS 132.017(2)(c) and KRS 160.597(1)(c) provide in part:

> Each sheet of the petition shall contain the names of voters from one (1) voting precinct only, and shall include the name, number and designation of the precinct in which the voters signing the petition live. The inclusion of an invalid signature on a page shall not invalidate the entire page of the petition, but shall instead result in the invalid signature being stricken and not counted. Each signature shall be executed in ink or indelible pencil and shall be followed by the printed name, street address, and Social Security number or birthdate of the person signing.

To place the issue on the ballot, the petition "shall be signed by a number of registered and qualified voters residing" in the school district equal to at least ten percent of the total votes cast in the last preceding presidential election. *Id.*

The parties are also in agreement regarding the facts. The Johnson County School District consists of five districts encompassing all or part of twenty-eight voting precincts. Prior to September 22, 2014, the compensating tax rate in the District was 38.1 cents per $100 of assessed property value. At a duly called regular meeting held on September 22, 2014, the Board voted to increase the Dis-

trict's tax rate to 45.3 cents per $100 of assessed property value. Pursuant to KRS 160.470, the portion of the tax increase exceeding four percent of the compensating tax rate was subject to recall.

On October 14, 2014, Belhasen, Meade, Hammond and two other Johnson County citizens, formed a petition committee and filed with the Johnson County Clerk an "Affidavit of Tax Recall Petition Committee." On November 6, 2014, the committee filed a recall petition containing 1,808 signatures with the Johnson County Clerk. To satisfy the statute's requirement of ten percent of the number of votes cast in the last presidential election, 771 valid signatures were required.

In an affidavit, Johnson County Clerk Sallee Conley Holbrook described the procedure she followed to certify the petition. Upon receiving the recall petition, Holbrook printed a full registration sheet from the Kentucky Board of Elections listing all Johnson County voters and cross-referenced the signatures with the names on the voter registration sheets. She also determined whether signatures were invalid because they were not legible or did not include a date of birth or social security number. Holbrook counted names that appeared multiple times in the petition only one time.

Holbrook verified 1,347 of the signatures and certified that the petition met the statutory requirements for the recall. Holbrook stated that she did not strike any signatures based on the failure to identify the voter's precinct because she was able to determine the precinct from the voter registration sheet based on date of birth or social security number. Holbrook did not publish the notice of affidavit because she believed the statute made it optional and the petition committee chose to forego publication. However, the petition committee's effort to seek the tax recall was the subject of various local news articles.

On December 5, 2013, the Board filed a declaratory judgment action in the Johnson Circuit Court challenging the certification of the tax recall petition. The Board named Holbrook in her capacity as Johnson County Clerk as the only respondent.

On December 15, 2014, Holbrook filed a motion to join the "Committed Members of the Petition" as parties. On December 30, 2014, the five members of the petition committee, including Belhasen, Meade, and Hammond, and Darrell Preston[1] moved to intervene in the matter. By order entered December 31, 2014, the motion to join the committee members as third-party defendants and the motion to intervene were granted.

Following the parties' motions for summary judgment and cross-motions for summary judgment and hearing oral arguments of the parties, the circuit court granted the Board's summary judgment motion and denied the cross-motions for summary judgment. The circuit court rejected the Board's contentions that the affidavit and recall petition insufficiently described the portion of the tax subject to the recall effort and the purpose of the petition committee. However, the circuit court found that certain pages of the petition did not meet the strict requirements of the controlling statutes in that they did not identify the signatories' precinct, identified the precinct by number only, or contained a signature from voters residing in two or more precincts. The circuit court struck all signatures from the noncompli-

---

1. Although not one of voters signing the affidavit, Preston is a resident and voter in the school district.

ant pages. If a signatory from a precinct was different from the others on that page, the signature was stricken. The circuit court concluded that only 155 of the 1,347 verified by Clerk Holbrook were valid.

The circuit court gave two alternative reasons for holding that the petition was defective and erroneously certified. Interpreting KRS 132.017(2)(b)(2) and KRS 160.597(1)(b)(2), the circuit court ruled that the publication of notice of the affidavit in a newspaper of general circulation in Johnson County was mandatory. It also ruled the petition committee failed to expressly list an address for future service as required by KRS 132.017(2)(b) and KRS 160.597(1)(b). This appeal followed.

The Board filed a motion to dismiss this appeal arguing that the petition committee, acting through a majority of its members, or individually as qualified voters, do not have standing to appeal the Johnson Circuit Court's determination that a tax recall petition was erroneously certified. The motion was passed to the panel for decision.

■ Standing is defined as a "sufficient legal interest in an otherwise justiciable controversy to obtain some judicial decision in the controversy." *Kraus v. Kentucky State Senate*, 872 S.W.2d 433, 439 (Ky.1993). The standing inquiry focuses on the parties' personal stake in the outcome of controversy. "In order to have standing to sue, a plaintiff need only have a real and substantial interest in the subject matter of the litigation, as opposed to a mere expectancy." *Rose v. Council for Better Educ., Inc.*, 790 S.W.2d 186, 202 (Ky.1989).

■ Only parties of record in the underlying action have standing to appeal. *Bartholomew v. Paniello*, 287 S.W.2d 616, 617 (Ky.1956). Even if a party in the underlying action, standing requires that the appealing party has been injured by the judgment. *See American States Ins. Co. v. Audubon Country Club*, 650 S.W.2d 252, 254 (Ky.1983).

■ This Court is unable to find where in the record the issue was preserved. As noted in *Harrison v. Leach*, 323 S.W.3d 702, 708 (Ky.2010), our Supreme Court joined "with the courts of our sister states who have held that any question regarding a lack of standing is waived if not timely pled." The Board's failure to object below to the intervention by the committee members or the motion to join them as third-party defendants waived any objection based on standing.

Moreover, as qualified voters and as members of the committee, the committee members had a sufficient interest in the outcome of the litigation to meet the first prong of the standing test. *See Cooper v. Kentuckian Citizen*, 258 S.W.2d 695, 696 (Ky.1953). The Board contests standing based on three alternative arguments.

■ First, the Board contends that the only parties below were the Board, Clerk Holbrook, and the petition committee and Preston as intervening defendants. It argues Belhasen, Meade and Hammond were not parties in their individual capacity as voters or as members of the petition committee.

In this declaratory action, Belhasen, Meade and Hammond were proper parties. KRS 418.075 provides in part:

When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.

As voters and as members of the petition committee, they had an interest in the affirmation of Holbrook's certification of the petition.

Moreover, Holbrook's motion to join additional parties expressly sought to join "the committee members of the petition" not the petition committee itself. Subsequently, the six voters sought to intervene as individuals. In conformity with those requests, the trial court's order joined "additional parties" and does not reference the petition committee alone. The individual members of the committee were parties to the declaratory judgment action and, therefore, standing to appeal cannot be denied on that basis.

The Board also contends that a majority of the petition committee cannot appeal and an appeal can only be taken by the five members collectively. First, we point out that the petition committee is not a legal entity but a name collectively identifying the requisite number of voters for a recall petition to be filed. Under the applicable statutes, the individual members constitute the petition committee and "they" are responsible for circulating the petition. The individual members constitute the committee. KRS 132.017(2)(b) and KRS 160.597(1)(b). By the use of the word "they" and not "it," the legislature imposed the responsibility on the individual members and not the committee collectively. "Petition Committee" is merely a convenient way to refer to the individuals who initiated the recall petition and does not deprive the individual members of that committee standing.

We are also unpersuaded by the Board's contention that the appellants were not parties below because the motion to intervene was not accompanied by a pleading. Kentucky Rules of Civil Procedure (CR) 24.03. In *Baker v. Webb*, 127 S.W.3d 622 (Ky.2004), our Supreme Court declined to deem the same defect as fatal to the motion to intervene. Additionally, the Board did not object on the basis that no pleading was filed with the motion to intervene and, therefore, the issue is waived.

Finally, the Board argues that under KRS 132.017(2)(h) and KRS 160.597(1)(h), the petition committee has no interest in this appeal. It contends that after the committee filed the recall petition with the clerk it had no further purpose. This argument is difficult to understand. The petition committee did not appeal, the petitioners appealed as voters and individual members of the committee. Again, as voters, the petitioners have standing.

Having determined that the petitioners have standing, we address the merits of their appeal. We do so under the prevailing standard of review of a summary judgement.

■ Summary judgment is appropriate where there exists no material issue of fact and movant is entitled to judgment as a matter of law. CR 56; *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991). Because the facts are not in dispute and the issues presented are matters of statutory construction and application, we review the circuit court's rulings *de novo*. *Daviess Cty. Pub. Library Taxing Dist. v. Boswell*, 185 S.W.3d 651, 656 (Ky.App.2005).

The Board and the petitioners are in agreement that the circuit court applied a strict compliance standard. Therefore, the question directly before this Court is whether strict compliance with the statutory requirements for placing the tax question on the ballot is required or if substantial compliance is sufficient.

■ In Kentucky, statutes are to be "liberally construed with a view to promote their objects and carry out the intent of the legislature[.]" KRS 446.080(1). To further the legislative intent, courts will apply substantial compliance when a statutory provision is directory rather than

mandatory. *Skaggs v. Fyffe*, 266 Ky. 337, 98 S.W.2d 884, 886 (1936). This determination is crucial because "[a] proceeding not following a mandatory provision of a statute is rendered illegal and void, while an omission to observe or failure to conform to a directory provision is not." *Id.*

▮▮ Whether a statutory provision is mandatory or directory is not necessarily resolved by the statutory language. The use of the word "shall" is not determinative if the "legislative intention appears otherwise." *Id.* Quoting *Skaggs*, our Supreme Court explained the analysis in *Knox Cty. v. Hammons*, 129 S.W.3d 839, 843 (Ky.2004) (quotations omitted), as follows:

> In considering whether the provision is mandatory or directory, we depend not on form, but on the legislative intent, which is to be ascertained by interpretation from consideration of the entire act, its nature and object, and the consequence of construction one way or the other. In other words, if the directions given by the statute to accomplish a given end are violated, but the given end is in fact accomplished, without affecting the real merits of the case, then the

statute is to be regarded as directory merely.

We will not discuss every Kentucky case that has applied the doctrine of substantial compliance to election statutes. It would be lengthy and burdensome. However, we note that its application dates back to as early as 1887, when in *Anderson v. Winfree*, 85 Ky. 597, 4 S.W. 351, 354 (1887), the court distinguished between mandatory and directory provisions and held that strict compliance with election statutes should not be required "when it would deprive the citizen of his free suffrage,— the dearest, highest, and most sacred privilege he enjoys."

The Board argues that while it may be that substantial compliance is the rule applicable to election statutes, it has no application to cases involving access to the ballot. Judicial precedent teaches otherwise.[2] *Skaggs*, routinely cited for its discussion of substantial compliance, dealt with the validity of a petition applying for a local option election.

▮▮ More recently, in *Daviess Cty. Pub. Library Taxing Dist.*, 185 S.W.3d 651, this Court specifically addressed KRS

---

2. The Board relies heavily on this Court's unpublished opinion in *Scott v. Bd. of Educ. of Green Cty.*, No. 2008–CA–001687–MR, 2009 WL 3151097 (Ky.2009). CR 76. 28(4)(c) provides:

> Opinions that are not to be published shall not be cited or used as binding precedent in any other case in any court of this state; however, unpublished Kentucky appellate decisions, rendered after January 1, 2003, may be cited for consideration by the court if there is no published opinion that would adequately address the issue before the court.

We conclude published opinions rendered by our Supreme Court and this Court adequately address the issues and, therefore, that case is not discussed. However, we briefly note that for the most part, it is easily distinguishable on its facts. The petition in that case had numerous flaws, which were summarized as follows:

> The original filing with the Clerk does not set out the petition committee's address for notices, nor state that the committee will be responsible for circulating it and filing it in the proper form. Also, and as the circuit court properly noted, the statute calls for the Clerk to publish a notice "identifying the tax levy being challenged" in a newspaper. The record indicates that the notice was published by the petition committee rather than the Clerk, and the petition failed to correctly identify either the Green County School Board or the tax which the committee sought to challenge. It cryptically stated that, "[T]his tax levy is the recall of a nickel by the School Board."

*Scott*, 2009 WL 3151097 at *2.

132.017. Taxpayers filed a petition pursuant to KRS 132.017 challenging the Daviess County Public Library Taxing District's tax increase. The Daviess Circuit Court found the petition complied with KRS 132.017. In affirming the circuit court, this Court recognized that the liberal construction afforded to statutes by KRS 446.080(1) was applicable to KRS 132.017 just as it is to election statutes. *Id.* at 658. Whether a statute governs the election procedure itself or the procedure to place an issue on the ballot, statutes should not be construed so as to deprive the citizens of the right to vote. *Id.*

Despite this Commonwealth's history of applying substantial compliance to election statutes, the Board cites several cases from this Court which it maintains support its view that strict compliance is applicable to voter recall petitions. The earliest is *Bd. of Ed. of Warren Cty. v. Fiscal Court of Warren Cty.*, 485 S.W.2d 752 (Ky.1972). In that case, a voters' petition was presented to the Warren County Fiscal Court seeking a referendum on a resolution levying a utility gross receipts tax. The applicable statute required that "one or more persons verify by affidavit the signatures and addresses of the signers of the petition." *Id.* at 752 (quotations omitted). In a brief majority opinion, the Court held the lack of verification of the signatories' addresses was fatal. *Id.* at 753.

Three points are noteworthy about the *Bd. of Ed. of Warren Cty.* decision. First, the flaw in the petition was the lack of verification of the signatures which, as Justice Reed pointed out in his concurring opinion, "was as important as the signatures themselves because it went to establish whether or not the signer was qualified." *Id.* at 756–57 (Reed, J.J., concurring). Second, it was an opinion rendered by a divided court with two Justices concurring by separate opinion and

two Justices dissenting. Finally, there is absolutely no use of the term "strict compliance" in the entire majority opinion much less language mandating strict compliance with all voter recall statutes. To the contrary, the Court's language indicates that not all defects in a petition will render it invalid.

Quoting its prior opinion in *Wiggins v. City of Winchester*, 421 S.W.2d 843, 845 (Ky.1967), the Court stated that the "least the petitioners should do is to pattern their petition on the requirements of the statute[,]" *Bd. of Ed. of Warren Cty.*, 485 S.W.2d at 752–53, indicating something less than strict compliance is required. In the following paragraph, the Court held that verification of the addresses was essential and, therefore, rejected the argument that "a petition lacking such verification substantially complies with the statute." *Id.* at 753. While the Court required strict compliance with the address verification requirement, it did not hold that strict compliance with every provision of a voter recall statute is required.

The Board also relies on *Bd. of Elec. of Taylor Cty. v. Bd. of Ed. of the Campbellsville Independent School Dist.*, 635 S.W.2d 324 (Ky.1982). That case had strikingly similar facts to those in the *Warren County* case in that it also involved a petition in opposition to a utility gross receipts license tax and, among other defects, the signatures on the petition were not properly verified by affidavit. Reluctantly, the Court affirmed stating that *Bd. of Ed. of Warren Cty.*, "mandated a strict compliance with the statute[.]" *Id.* at 328. Read in isolation, the Court's statement would lend support to the Board's argument. However, in the same paragraph, the Court continued and stated "we cannot hold there was substantial compliance with the statute." *Id.* Given the Court's language, all that can be said about the prece-

dent established is that strict compliance applied to the statute's requirement that the signatures be verified.

As the Board points out, there are numerous examples where our Supreme Court has rejected claims of substantial compliance with statutes that apply to gaining access to the ballot. *See, e.g., Barnard v. Stone,* 933 S.W.2d 394 (Ky. 1996) (a registered voter could not authorize another person to sign nominating petition); *Morris v. Jefferson Cty. Clerk,* 729 S.W.2d 444 (Ky.1987) (claim of substantial compliance rejected where candidate failed to obtain affidavit of two registered voters on his nominating petition as required by statute); *Thomas v. Lyons,* 586 S.W.2d 711 (Ky.1979) (substantial compliance was not applicable to statutory number of signatures on nominating petition). To the extent these cases hold certain statutory requirements must be strictly complied with to gain access to the ballot as either a candidate or by voter recall petition, the result cannot be reasonably challenged. Yet, that same reasoning does not resolve whether the flaws in this case are fatal to the voters' attempt to place the issue of the school tax on the ballot.

██ To be clear, there is no fraud or misconduct alleged. Moreover, there is no debate that Clerk Holbrook was able to and did verify 1,347 voter signatures, almost twice the 771 signatures required, from the Kentucky Board of Elections registration sheets using the voter's name, address, birth date and social security number. The bulk of the signatures were not stricken by the circuit court because the signature could not be verified as that of a qualified voter, but because of insufficient identification of the voter's precinct or where the signature was affixed to the petition.

The purpose of requiring a precinct name and that each page contain signa-tures from only one precinct is obvious. It is to assist the clerk in matching the signature on the recall petition with the signature on the voter registration records and may be necessary when instant computer access to voter registration records is not available. We agree that when a precinct is not properly identified or signatures are not on the proper respective page, the clerk has the discretion to not count the offending signatures or pages. However, where the name, address, date of birth and social security number of the signatory is provided and the clerk is able to and does verify the signature from the registration sheets, there appears to be little logic in striking the signature and certainly no logic in striking the entire page of the petition.

Here, although there were technical flaws, there is no allegation that the petition was not signed by the number of qualified voters in the school district seeking to have the school tax decided by election. Simply because a voter may not have identified a precinct, not known his or her precinct name, or signed on the wrong page, should not invalidate his or her signature. We hold that the petition substantially complies with the statutory requirements.

██ The circuit court also found the petition was fatally flawed because the clerk did not publish notice of the recall petition within five days. We do not believe this is an issue of strict compliance or substantial compliance because the clear statutory language is permissive. KRS 132.017(2)(b)(2) and KRS 160.597(1)(b)(2) state in part: "*If the petition committee elects to have the notice published,* the clerk shall publish the notice within five (5) days of the receipt of the affidavit[.]" Under the plain statutory language, the petition committee can opt to have the clerk

publish that an affidavit has been filed or decline publication.

Notably, the notice in this case is not to make the public aware of any proposed government action such as the adoption of an ordinance imposing a tax which the public may protest or support. The notice in this case serves an entirely different purpose. Publication that a tax recall affidavit has been filed with the names and addresses of the petition committee members renders the task of the petition committee members to obtain signatories less burdensome. By publishing the notice, interested voters are informed of who to contact to sign the petition. Clerk Holbrook properly determined that because the committee did not request publication of notice, none was required.

The final basis for the circuit court's decision was that the petition committee did not list an address for future service as provided for in KRS 132.017(2)(b) and KRS 160.597(1)(b). Again, under the substantial compliance analysis, foremost we must discern the intent of the legislature.

The members of the petition committee provided their individual names and addresses and anything required to be sent by the clerk could have been sent to one or all of the members. Again, the designation of a single member to receive any documents sent by the clerk is for the clerk's convenience and not mandatory. While the clerk may require such a designation, it is not a basis for reversing the clerk's acceptance of the affidavit. Moreover, the only notice that would have been sent to the committee would be in the event the clerk found the petition insufficient to allow the committee members to challenge that finding. Here, there was no such determination. The statutory provision is directory and not a basis for invalidating the affidavit and petition.

Having concluded the reasons given by the circuit court to support its decision were erroneous as a matter of law, we address the Board's alternative arguments that the affidavit and petition were fatally flawed from inception.

 The Board contends the affidavit was required to state that the petition committee members "will be responsible for circulating the petition and filing it in the proper form within forty-five (45) days from the passage of the ordinance, order, resolution, or motion." KRS 132.017(2)(b). *See also* KRS 160.597(1)(b). The Board proposes that strict compliance is required. Again, we disagree.

The affidavit expressly states that "the purpose of the petition which will be filed is to place on the Ballot the issue of recall or roll back that portion of the tax increase approved by the Johnson County Board of Education." It expressly sets forth the purpose of the petition. Although it does not state the responsibilities of the petition committee to circulate and file the petition, there is no dispute that the committee assumed that responsibility and the petition was circulated and filed. We conclude there was substantial compliance.

 The Board argues that only the portion of the tax levy increase between 39.6 percent and 45.3 percent was subject to recall and each page was required to state that only a portion of the tax was subject to recall. We conclude each page of the petition clearly states the subject of the petition.

Each page of the 135–page recall petition states that it is "a petition of the voters in the Johnson County School District to recall the tax increase imposed upon the citizens of Johnson County by the Johnson County Board of Education." In *Daviess Cty. Pub. Library Taxing Dist.,*

the same argument was made that the petition was required to state that only a portion of the tax was subject to recall and rejected. This Court held as follows:

> KRS 132.017 places few specific requirements on the form of the petition. It requires only that the petition protest "against passage of the ordinance, order, resolution, or motion" that increased the tax rate. Here, the appellees specified the taxing authority and the tax increase passed by that authority. We conclude the petition was not invalid on its face even though it did not specify "that portion" of the rate subject to recall.

*Daviess Cty. Pub. Library Taxing Dist.,* 185 S.W.3d at 658. The same is true here. Each page of the petition identifies the tax sought to be recalled and the Johnson County School Board as the taxing authority.

 We conclude that voter tax recall statutes are to be afforded the same liberal construction extended to election statutes generally. By enacting KRS 132.017 and KRS 160.597, the legislature intended that voters have the right to place certain tax levies on the ballot for public approval or disapproval. Here, that end was accomplished.

The summary judgment of the Johnson Circuit Court is reversed and the case remanded for entry of summary judgment in favor of the petitioners.

Having considered the appellee's motion to dismiss appeal and response thereto, and being sufficiently advised, the COURT ORDERS that the motion be, and it is hereby, DENIED.

ALL CONCUR.